**In the Matter of Henry DANESI, Sr., Bankrupt.**

**RUSCH FACTORS, Division of BVA Credit Corporation, Plaintiff–Appellant,**

v.

**Henry DANESI, Sr. a/k/a Henry P. Danesi, Defendant–Appellee.**

**Bankruptcy No. 79 B 158. No. 80 Civ. 0067(MEL).**

United States District Court, S. D. New York.

Sept. 19, 1980.

---

Hahn, Hessen, Margolis & Ryan, New York City, for plaintiff–appellant; Richard Turyn, New York City, of counsel.

Jeffrey L. Sapir, Yonkers, N.Y., co–counsel with Fredericks & Goldberger, White Plains, N.Y., for defendant–appellee.

LASKER, District Judge.

This is an appeal from Bankruptcy Judge Howard Schwartzberg's decision that the debt which Henry Danesi, Sr. ("Danesi") owed to Rusch Factors, Division of BVA Credit Corporation ("Rusch") is dischargeable in bankruptcy. Rusch contends that the bankruptcy court committed clear error in finding that Danesi had no intent to deceive Rusch when he submitted erroneous information to Rusch in connection with a credit transaction, and that Rusch could not reasonably have relied on the information. Rusch also appeals from a pre–trial denial of its request for a default judgment, from the exclusion of certain evidence at trial, and from a denial of post–trial relief.

The bankrupt, Danesi, had been secretary, treasurer and fifty percent stockholder of Supreme Synthetic Dyers, Inc. ("Supreme"). Rusch is a factoring and commercial finance company. In April, 1974, Rusch agreed to enter into a factoring arrangement with Supreme whereby Rusch advanced $810,000. to Supreme and received an assignment of Supreme's accounts receivables. In addition, Danesi and his fellow officer and stockholder of Supreme, Lewis Scheffler, provided Rusch with personal guarantees for the loan as well as personal financial statements. In March, 1975, Supreme was adjudicated a bankrupt. Rusch then filed suit and won a judgment for $147,541.92 on the basis of Danesi's guarantee. On February 1, 1979, Danesi filed a voluntary bankruptcy petition. Rusch commenced this proceeding to prevent the discharge of the judgment owed it, alleging that the extension of credit to Supreme was made in reliance on Danesi's intentionally false financial statement and is therefore nondischargeable under the

Bankruptcy Act of 1898, as amended (repealed 1978).[1]

Rusch's argument is based on the fact that, in his financial statement, Danesi listed as a personal asset a house which in fact was (and is) jointly owned with his wife as tenants in the entirety (making it unavailable to satisfy Rusch's claim against Danesi). The statement also indicated that the listed assets did not include real estate owned by Danesi's family.

▮ Judge Schwartzberg found that Rusch could not have reasonably relied on Danesi's financial statement and that any false impression created by the statement was not intentional. Such findings of fact cannot be upset on review unless they are clearly erroneous. Bankruptcy Rule 810.

▮ The record contains ample evidence to support both findings. On the question of reliance, Danesi's financial statement on its face suggests that it could not be the basis for reasonable reliance in a large credit transaction. The statement listed only assets and not liabilities (except for a mortgage on the house). It did not purport to be a statement of Danesi's net worth. By itself, it could give no realistic picture of Danesi's financial situation. And it is clear from the trial testimony that Rusch did not request any additional information concerning Danesi's finances, nor make any attempt to clarify or verify the information which was provided. Judge Schwartzberg concluded that it would be unrealistic to suppose that a sophisticated and experienced lender, such as Rusch, would loan substantial sums of money on the basis of such an obviously incomplete and uninformative financial statement, and that if Rusch did in fact rely, its reliance was not reasonable. These conclusions are surely not clearly erroneous. To the contrary, they appear to be levelheaded and sound.

Rusch contends that its reliance was reasonable in light of the confidence which it placed in the accounting firm which prepared the statement and the fact that it regularly accepted such financial statements. Neither circumstance, however, can change the fact that the financial statement on its face did not contain sufficient information upon which to evaluate the guarantor's financial status.

The fact that a respected accounting firm prepared the financial statement cuts against Rusch's contention that the erroneous information was intentionally misleading. If Rusch could rely on the accounting firm to ensure that the appropriate information was presented on the statement, Danesi himself could rely on the accounting firm to inform him of which assets to list. Yet there is no evidence that Danesi was ever instructed, by either Rusch or the accountant, as to what should or should not be included. According to his trial testimony, Danesi was under the impression that Rusch had requested a financial statement of "husband and wife" (Tr. 121) and that is why he included the jointly held home. Danesi testified that he treated the task in the same fashion as when he submitted figures to the accountant for the preparation of a joint income tax return. Indeed, not only did he list the jointly held house, but he also included bank accounts which were either jointly held or held in his wife's name only, just as he did for income tax purposes.

To be sure, one might expect a businessman with Danesi's extensive experience to know that jointly held property cannot be listed as a personal asset. Danesi's testimony, however, reveals a general lack of financial sophistication. According to Danesi, he had not ever been called upon to provide a financial statement before this

---

**1.** Section 14c(3) of the Bankruptcy Act bars a discharge to a bankrupt who, "while engaged in business as an executive of a corporation, obtained for such business money or property on credit or as an extension or renewal of credit by making or publishing a materially false statement in writing respecting his financial condition . . .". 11 U.S.C. § 32C(3).

Section 17a(2) of the Bankruptcy Act excepts from discharge "liabilities for . . . obtaining money or property on credit . . . in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive . . .". 11 U.S.C. § 35(a)(2).

transaction. Scheffler, his fellow stockholder and officer, had alone handled the financial end of Supreme's business. As to the financial statement at hand, Danesi testified "we filed joint returns, so I thought maybe that's the way its done." (Tr. 110) Even at trial Danesi could not state whether shares of stock listed on the statement were jointly held or not. Finally, Danesi testified that at the time he provided the accountant with the information for the financial statement he did not even know that he would be giving a guarantee. In light of this testimony and the circumstances surrounding the transaction, the bankruptcy court was justified in finding that Danesi did not intend to deceive Rusch.

We agree with Rusch that the bankruptcy court's emphasis on a distinction between reliance on the guarantee itself as opposed to reliance on the statement supporting the guarantee is questionable. Nonetheless, that point is insufficient to overcome the fact that the principal findings below concerning Danesi's lack of intent and Rusch's lack of reasonable reliance are well supported in the evidence and *ipso facto* not clearly erroneous.

Rusch's remaining contentions are unpersuasive. Proffered evidence concerning payments made on behalf of Supreme by Danesi after Supreme's insolvency was properly excluded insofar as Rusch failed to demonstrate at trial its relevance to Danesi's intent at the time of the financial statement, months earlier. Fed.R.Evid. 402. Rusch has never alleged any prejudice from the fact that Danesi's answer was accepted late and none has been shown. Accordingly, the discretionary denial of its request for a default judgment was not error. *Albert Levine Associates, Inc. v. Kershner*, 45 F.R.D. 450 (S.D.N.Y.1968). The bankruptcy court's refusal to consider evidence presented after trial is not erroneous since Rusch made no showing that the evidence was not available prior to trial. In any event, the additional evidence could not alter the ultimate outcome of the case since it was not relevant to Rusch's lack of reliance. Fed.R. Civ.Pr. 60(b)(2); 61.

The bankruptcy court's order is AFFIRMED.

It is so ordered.