**In the Matter of John A. ESPOSITO, Debtor.**

**Bankruptcy No. 82 B 11875.**

United States Bankruptcy Court, S.D. New York.

Dec. 3, 1984.

Bruce D. Scherling, New York City, for trustee; Gustav Rech, of counsel.

Weil, Gotshal & Manges, Inc., New York City, for Manufacturers Hanover Bank, Pioneer Bank & Trust Company and Royal Bank and Trust Company; Richard A. Rothman, and Jacqueline Marcus, New York City, of counsel.

Kulcsar & Jacobs, New York City, for John A. Esposito; Stacy Sonett, of counsel.

DECISION ON MOTION AND CROSS–MOTION FOR SUMMARY JUDGMENT

BURTON R. LIFLAND, Bankruptcy Judge.

The instant motion for summary judgment arises in the context of an adversary proceeding to determine the dischargeability of certain debts of the debtor pursuant to Bankruptcy Code ("Code") section 523(a)(2)(A) and (B), and to determine whether the debtor should be denied a discharge pursuant to Code section 727(a)(3) and (7).

I. *Factual Background*

On September 22, 1982, involuntary bankruptcy petitions were filed against John A. Esposito, the debtor, and against Cargo Fashions, a corporation controlled by him. The involuntary petitions were filed by Manufacturers Hanover Trust Co. ("MHT"), The Royal Bank & Trust Company ("Royal"), and Pioneer Bank & Trust Company ("Pioneer") (collectively, "the Banks"), the plaintiffs herein. On October 25, 1983, this court entered orders for relief against Esposito and Cargo.

The claims against Esposito which led to the involuntary petition arose as a result of Esposito's personal guarantee of loans made by the Banks to Cargo and 2912 Construction Company ("2912"), another Esposito controlled entity, in the aggregate principal amount of $10.5 million (the "Loans"). Specifically, in the late spring and summer of 1982, Esposito obtained $4 million from MHT, $4 million from Royal, and $2.5 million from Pioneer, for the ostensible purpose of providing working capital for Cargo and 2912. However, Esposito utilized the proceeds of the loans for purposes unrelated to the operations of Cargo and 2912.

Immediately prior to the commencement of the involuntary chapter 7 cases, and shortly after the Banks learned of the fraud Esposito had perpetrated upon them, Esposito fled the United States and attempted to establish residence in the Republic of Ireland, which has no extradition treaty with the United States. After several months in exile during which Esposito allegedly lost access to much of the property he had concealed from the Banks and other creditors, Esposito returned to the United States and was immediately taken into custody. Esposito has not repaid the Loans and is indebted to the Banks in the aggregate principal amount of $10.5 million, plus interest, expenses and attorneys fees.

Soon after Esposito returned from Ireland in the spring of 1983, a grand jury in the United States District Court for the Eastern District of New York returned a criminal indictment charging Esposito with, *inter alia*, knowingly conspiring to make false statements to each of the Banks, in violation of 18 U.S.C. § 1014,[1] for the pur-

---

1. 18 U.S.C. § 1014 provides, in pertinent part, that:

 "[W]hoever knowingly makes any false statement or report, or wilfully overvalues any land, property or security, for the purpose of influencing in any way the action of ... any Federal intermediate credit bank, or any division, officer, or employee thereof, ... a Federal Home Loan Bank, ... a Federal Savings and Loan Association, a Federal Land bank, ... a Federal Reserve bank, ... any institution the accounts of which are insured by the

 Federal Savings and Loan Insurance Corporation, any bank the deposits of which are insured by the Federal Deposit Insurance Corporation, any member of the Federal Home Loan Bank System, the Federal Deposit Insurance Corporation, the Federal Savings and Loan Insurance Corporation, ... upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan, or any change or extension of any of the same, by renewal, deferment of action or otherwise, or the acceptance, re-

pose of inducing them to make the Loans, and taking property belonging to MHT with intent to steal, in violation of 18 U.S.C. § 2113(b).[2]

On November 10, 1983, Esposito pleaded guilty to conspiring to commit bank fraud with respect to each of the Banks in violation of 18 U.S.C. § 1014, and to bank larceny regarding MHT, in violation of 18 U.S.C. § 2113(b).

The specific acts by which Esposito admitted committing the fraud include the following:

(a) applying to MHT and Royal for lines of credit of $4 million and to Pioneer for an enlargement and extension of Cargo's line of credit, for the stated purpose of financing the production of Cargo's fall 1982 line of clothing and utilizing the proceeds of the Loans for purposes unrelated to the operations of Cargo;

(b) presenting the Banks with copies of financial statements purporting to be certified by a certified public accountant, which Esposito knew had not been examined by a certified public accountant;

(c) presenting the Banks with copies of certified financial statements which Esposito knew substantially overstated Cargo's sales and substantially understated Cargo's assets, in order to induce extensions of credit;

(d) presenting Pioneer with a copy of a certified financial statement regarding 2912 which substantially overstated the assets of 2912, in order to induce Pioneer to make the loan to 2912;

(e) representing to Pioneer that the loan to 2912 would be utilized to provide working capital for 2912 when Esposito knew that 2912 was not a functioning business, in order to induce Pioneer to make the loan to 2912;

(f) misrepresenting to Pioneer the source of the monies utilized to repay Cargo's prior debt to Pioneer;

(g) representing to MHT and Royal that Cargo's debt to Chemical Bank would be paid with the proceeds of the sale of Cargo's spring 1982 line of clothing, in order to induce them to make the Loans and to conceal the fact that Cargo was not generating sufficient funds to satisfy its outstanding obligations; and

(h) taking with intent to steal and purloin from MHT, on or about August 3, 1982, $750,000 belonging to MHT.

By complaint dated May 11, 1983 the Banks commenced an action under sections 523 and 727 of the Code for (a) an order denying Esposito's discharge, (b) a determination of non-dischargeability of the debts owed by Esposito to the Banks, and (c) judgment on those debts.

On September 19, 1983, Bruce D. Scherling, the trustee of the chapter 7 estates of both Esposito and Cargo (the "Trustee") moved to intervene as a plaintiff in the Banks' action for denial of Esposito's discharge. The requested relief was granted and on October 31, 1983 a summons was issued against Esposito.

At a meeting held on December 28, 1983 attended by Esposito, his counsel, the Trustee, the Trustee's special counsel and accountants, and the Banks' counsel, Esposito admitted that several months before he

---

lease, or substitution of security therefor, shall be fined not more than $5,000 or imprisoned not more than two years, or both."

**2.** 18 U.S.C. § 2113(b) provides:
Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100. belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined not more than $5,000 or imprisoned not more than ten years, or both; or Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value not exceeding $100. belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined not more than $1,000 or imprisoned not more than one year, or both.

fled the country, he caused Cargo's employees to destroy a substantial amount of Cargo's books and records.

By notice of motion, the Banks moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Federal Rules")[3] made applicable in bankruptcy by Bankruptcy Rule 7056.[4] The motion for summary judgment is based upon the grounds set forth in Code § 523(a)(2)(A) and (B), that the loans should be declared non-dischargeable because Esposito obtained them through false representations and actual fraud and through the use of materially false financial statements; and upon the grounds set forth in § 727(a)(3) and (7), that Esposito's discharge should be denied because he caused the destruction of books and records of Cargo, of which he is an insider.

Without refuting or recanting the admissions set forth hereinbefore Esposito opposes the motion for summary judgment on two grounds. He contends that summary judgment is inappropriate under Code § 523(a)(2)(A) and (B) because the Banks have failed to produce any evidence to establish that their reliance on Esposito's misrepresentations and false financial statements was reasonable, i.e., that they comported with normal business practices in the industry. He further alleges that the Banks have failed to establish that the destruction of Cargo's books and records made it impossible to ascertain Esposito's financial condition, as required by Code § 727(a)(3) and (7). For the following reasons the court grants the Banks' motion for summary judgment.

## II. *Summary Judgment*

Rule 56 of the Federal Rules states that summary judgment shall be granted to the moving party if the court determines that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Normally proceedings involving discharge and dischargeability are not grist for summary judgment motions. This is because they most often involve issues of intent, gleaned from invariably disputed facts. In this case, however, the operative facts are admitted and the malevolent conduct of the debtor has been acknowledged. Therefore the matter is ripe for a summary judgment determination.

When a motion for summary judgment is made and supported by the movant, as in the instant case, Federal Rule 56(e) requires the adverse party to set forth specific facts showing that there is a genuine issue for trial. If he does not do so summary judgment, if appropriate, shall be entered against him. *See First National Bank of Arizona v. Service Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968); *Wyler v. United States*, 725 F.2d 156, 160 (2d Cir.1983); *Project Release v. Prevost*, 722 F.2d 960, 969 (2d Cir.1983); *Contemporary Mission, Inc. v. United States Postal Service*, 648 F.2d 97, 107 (2d Cir.1981).

The court is required to go beyond the mere pleadings of the parties and consider all of the admissible evidence set forth in the papers and all inferences reasonably deducible from such evidence to determine whether there is a genuine issue for trial. *Schwabenbauer v. Board of Education*, 667 F.2d 305, 313 (2d Cir.1981); *George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 554 (2d Cir.1977); *United States v. Matheson*, 532 F.2d 809, 813 (2d Cir.), *cert. denied*, 429 U.S. 823, 97 S.Ct. 75, 50 L.Ed.2d 85 (1976).

In the instant case, the Banks have submitted the following: a) affidavits pre-

---

**3.** Federal Rule of Civil Procedure 56(c) provides in pertinent part that the moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

**4.** Bankruptcy Rule 7056 provides that "Rule 56 F.R.Civ.P. applies in adversary proceedings."

pared by various lending officers with personal knowledge of the Esposito loans; b) affidavits by the Trustee and the certified public accountant retained by the Trustee to investigate the books and records of Esposito and Cargo, (c) Esposito's guilty plea in the prior criminal proceeding; and (d) the admissions made by Esposito at the December 28, 1983 meeting. These submissions establish that Esposito defrauded the Banks through the use of false representations and false financial statements, that the Banks' loan officers relied on these statements in making the loans, and that Esposito admitted to causing the destruction of Cargo's books and records. Esposito has not produced any evidentiary matter to dispute the facts contained in these papers. Nor has he framed a real factual dispute as required by Rule 3(g) of the Local Civil Rules for the Southern District of New York.[5] Rather, in the papers submitted in opposition to the summary judgment motion, he infers purely legal standards to be applied regarding the reasonableness of the Banks' reliance on his false statements and whether the destruction of Cargo's books makes it impossible to determine Esposito's financial condition. Esposito's submissions consist solely of an attorney's affidavit on information and belief. No affidavit on Esposito's own personal knowledge has been submitted. Therefore, based on all of the movants' submissions and the fact that, wherever pertinent, they have not been refuted by Esposito, this court finds that there are no remaining material factual issues in dispute, and that summary judgment is appropriate in this case. Furthermore, after viewing "the inference to be drawn from the underlying facts contained in the papers submitted on the motion ... in the light most favorable to the party opposing the motion," *Board of Education, Island Trees Union Free School District No. 26 v. Pico*, 457 U.S. 853, 863, 102 S.Ct. 2799, 2806, 73 L.Ed.2d 435 (1982), it is clear that the Banks' motions to declare Esposito's debts to them non-dischargeable pursuant to § 523(a) and to deny his discharge pursuant to § 727(a) should be granted.

### III. *Section 523 Exceptions to Discharge*

Section 523 of the Bankruptcy Code provides in pertinent part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

.　　.　　.　　.　　.

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; or

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

---

5. Local Rule 3(g) provides that upon a motion for summary judgment the moving party must submit a statement of the material facts as to which he contends there is no genuine issue in dispute. The opponent of such a motion must submit a statement of the material facts as to which he contends that there are genuine issues to be tried.

Rule 3(g) further provides that "[a]ll material facts set forth in the statement required to be served by the moving party *will be deemed admitted unless controverted by the statement required to be served by the opposing party.*" (Emphasis added.)

As Esposito has failed to controvert the Banks' 3(g) statement regarding the following material facts, he is deemed to have admitted them:

1. Esposito obtained the loans for Cargo and for 2912 by false pretenses, false representa-

tions, and materially false financial statements with which Esposito intended to deceive the Banks.

2. Esposito has been convicted of violating 18 U.S.C. §§ 1014 and 2113(b).

3. Esposito caused books and records of Cargo to be destroyed, mutilated and falsified and failed to preserve recorded information, including books, records, documents and papers, from which the debtor's financial condition or business transactions might be ascertained.

In this regard Esposito frivolously asserts that the destruction did not render reconstruction of his financial affairs impossible. Knowledgeable of his own affairs, he points to no real alternative paper trail.

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

## A. *Collateral Estoppel*

■ The burden of proving all of the elements of § 523 falls on the party objecting to the dischargeability of the debt. *See, e.g., In re Patch, IV*, 24 B.R. 563, 565 (D.Md.1982); *In re Dawson*, 16 B.R. 70, 73 (Bankr.E.D.Va.1981); *In re Spangler*, 14 B.R. 598, 600 (Bankr.W.D.Va.1981); 3 *Collier on Bankruptcy*, ¶ 523.09 at 523–49 (15th ed. 1979).

The Banks contend that they have met this burden by virtue of the doctrine of collateral estoppel. They claim that Esposito is collaterally estopped from relitigating those elements of § 523(a)(2)(A) & (B) which were conclusively established in his guilty plea in the prior criminal action against him.

Esposito, on the other hand, alleges that collateral estoppel is inappropriate in this case because while his guilty plea conclusively proves all of the facts underlying his criminal conviction, it does not address the issue of whether the Banks' reliance was reasonable under the circumstances as required by § 523(a). According to Esposito, a trial is the only means of establishing that the Banks' reliance was reasonable.

The Banks recognize that this element of § 523(a)(2) is missing from Esposito's guilty plea. Nevertheless, they believe that reasonable reliance can be inferred from the facts of the case. Furthermore, the affidavits of Bank employees establish that the Banks actually relied on Esposito's misstatements.

■ For the following reasons this court finds that the doctrine of collateral estoppel, as applied in this case, cannot establish reasonable reliance on the part of the Banks, for that was not an element of his criminal conviction. Nevertheless, the court holds that the Banks have established, by other means, all of the elements necessary for a finding of non-dischargeability under § 523(a)(2)(A) and (B).

Courts have long held that the doctrine of collateral estoppel is applicable in civil suits based on an underlying criminal conviction resulting from a guilty plea. In *United States v. Podell*, 572 F.2d 31 (2d Cir.1978), the court stated that "a criminal conviction, whether by jury verdict or guilty plea constitutes estoppel ... in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case." *Id.* at 35. *See also McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969); *United States v. Frank*, 494 F.2d 145, 160 (2d Cir.) *cert. denied sub nom. Borgman v. United States*, 419 U.S. 828, 95 S.Ct. 48, 42 L.Ed.2d 52 (1974).

Bankruptcy courts within the Second Circuit have uniformly applied the doctrine of collateral estoppel in dischargeability proceedings when the following four-part test, first enunciated in *In re Allen*, 3 B.R. 355 (Bankr.W.D.N.Y.1980) has been met:

(1) The issue sought to be precluded is the same issue as that involved in the prior action;

(2) The issue has actually been litigated;

(3) The issue has been determined by a valid and final judgment; and

(4) The determination was essential to the final judgment.

*Id.* at 357–358. *See also In re Schwartz*, 36 B.R. 355, 357 (Bankr.E.D.N.Y.1984); *In re Graziano*, 35 B.R. 589, 594 (Bankr.E.D. N.Y.1983); *In re Spector*, 22 B.R. 226, 231 (Bankr.N.D.N.Y.1982); *In re Sloan*, 18 B.R. 1021, 1023 (Bankr.E.D.N.Y.1982); *In re Supple*, 14 B.R. 898, 903 (Bankr.D.Conn. 1981); *In re Iannelli*, 12 B.R. 561, 563 (Bankr.S.D.N.Y.1981).

■ The criminal statute under which Esposito was convicted, 18 U.S.C. § 1014, imposes criminal liability for knowingly making a false statement to influence a federal bank's action on a loan application. There is no requirement under this statute

that a bank rely on the information, for "[t]he essence of the crime [is] the making of false statements with intent to influence the Bank, and whether or not the Bank [is] actually induced to *rely* upon them is irrelevant." *United States v. Cleary*, 565 F.2d 43, 46 (2d Cir.1977) (emphasis added). *See also United States v. Shaid*, 730 F.2d 225, 232 (5th Cir.1984); *United States v. Glassey*, 715 F.2d 352, 353 (7th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 566, 78 L.Ed.2d 733 (1983); *United States v. Bonnette*, 663 F.2d 495, 498 (4th Cir.1981), *cert. denied*, 455 U.S. 951, 102 S.Ct. 1456, 71 L.Ed.2d 666 (1982); *United States v. Norberg*, 612 F.2d 1, 4 (1st Cir.1979); *United States v. Kennedy*, 564 F.2d 1329, 1340 (9th Cir.1977), *cert. denied sub nom. Myers v. United States*, 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1978).

■ In contrast, a finding of reasonable reliance on the part of a creditor is necessary to support a determination of non-dischargeability under both subsection 523(a)(2)(A) and (B). *See In re Houtman*, 568 F.2d 651, 655 (9th Cir.1978); *In re Hunt*, 30 B.R. 425 (M.D.Tenn.1983); *In re Patch, IV*, 24 B.R. at 565; *Sweet v. Ritter Finance Co.*, 263 F.Supp. 540, 543 (W.D. Va.1967); *In re Hutchinson*, 27 B.R. 247 (Bankr.E.D.N.Y.1983); *In re Nacol*, 30 B.R. 193, 194 (Bankr.M.D.Fla.1983); *In re Spector*, 22 B.R. 226, 232 (Bankr.N.D.N.Y. 1982); *In re Breen*, 13 B.R. 965 (Bankr.S. D.Ohio 1981); *In re Shepherd*, 13 B.R. 367 (Bankr.S.D.Ohio 1981); *In re Baiata*, 12 B.R. 813, 819 (Bankr.E.D.N.Y.1981); *In re Ducote*, 4 B.C.D. 943, 944 (Bankr.W.D.La. 1978).

■ Applying the *Allen* analysis to the case at bar, it is clear that reasonable reliance on the part of the Banks was not an issue that was raised, litigated, determined, or even necessary to Esposito's conviction in the prior criminal action. Therefore, while collateral estoppel is applicable to establish every other element of § 523(a)(2)(A) and (B), namely that Esposito intentionally obtained the money through false representations and false financial statements, collateral estoppel cannot be used to establish reasonable reliance. The court is nevertheless satisfied that there is sufficient evidence, unrebutted by Esposito, to establish that the Banks' reliance was reasonable.

### B. *Reasonable Reliance*

■ The affidavits submitted by the Banks in support of their summary judgment motion attest to the fact that they relied on the financial statements and other representations made by Esposito and his agents, and that they would not have approved any loans to Cargo or 2912 had they known the true financial condition of these entities. Esposito does not dispute the truth of these affidavits, but merely questions the reasonableness of the Banks' reliance on these financial statements in light of the enormity of the fraud he ultimately committed. He seems to argue, as confidence men invariably do, that the real perpetrator of this crime is the victim, for allowing itself to be victimized in the first place. Given his elaborate scheme, accomplished by guise, false documentation and trick, this *in pari delicto* argument falls flat.

The cases relied upon by Esposito in his memorandum of law on this issue are not dispositive, for they deal with situations where the creditor either knew that the financial statement was false or was so reckless in its disregard of the customary precautions in the lending industry that its reliance was indeed unreasonable.[6] Al-

---

**6.** Counsel for Esposito cites several cases for the proposition that the Banks must establish reasonable reliance in light of the custom and usage of the lending industry and the circumstances of the case. However, these cases are easily distinguishable, as each of these cases involves lenders who were aware of the incompleteness or inaccuracy of the borrower's finan-

cial statements and representations at the time the loans were made.

In *In re Patch IV*, 24 B.R. 563 (D.Md.1982), for instance, the lender testified that the debtor's financial statement was the major factor in his decision to make the loan. Nevertheless, although the lender was informed prior to making the loan that the debtor's business was a

though a plaintiff cannot assert reasonable reliance on a financial statement that he knew or should have known was inaccurate or incomplete, the financial statements relied on here did not facially indicate the presence of any material misrepresentations. *See, e.g., Kentile Floors, Inc. v. Winham,* 440 F.2d 1128 (9th Cir.1971); *In re Hunt,* 30 B.R. 425, 450 (M.D.Tenn.1983); *In re Ciampi,* 14 B.R. 441 (Bankr.D.Conn. 1981); *In re Magnusson,* 14 B.R. 662 (Bankr.N.D.N.Y.1981). In fact, their accuracy was attested to by a certified public accountant.

Neither has any evidence been submitted that the Banks had independent information indicating that any of Esposito's representations were false. On the contrary, Esposito was a sophisticated businessman who apparently had a successful and long-standing relationship with several banks prior to his fraudulent loan activities. Furthermore, the fact that the Banks requested and received the statement of the certified public accountant demonstrates their efforts to independently corroborate the information supplied by Esposito. Hence, there is nothing in the evidence to support a finding that the Banks' reliance on these fraudulent statements was unreasonable. As the Seventh Circuit explained in *In re Garman,* 643 F.2d 1252 (7th Cir.1980),

"[It] is not the court's duty ... to second guess a creditor's decision to make a loan or to set loan policy for the creditor .... The present issue for the court is simply whether the [debtor] obtained credit, or a renewal, through the creditor's reliance on a materially false financial statement containing information apparently sufficient to obtain an accurate picture of the debtor's financial condition ... filed by the debtor with the intent to deceive the creditor. *The creditor need establish only its reliance in fact, although its claims to reliance cannot be so unreasonable as to defeat a finding of reliance in fact.* Given this reliance, the court, with the benefit of hindsight, should not base its decision regarding discharge on whether *it* would have extended the loan."

*Id.* at 1258 (emphasis added).

The Banks' failure to verify in all respects the authenticity of the information submitted by Esposito does not mean that their reliance was unreasonable. The extent of the Banks' investigation bears only on their internal procedures, and not on whether their reliance was reasonable. *In re Blatz,* 37 B.R. 401, 404–405 (Bankr.E.D. Wis.1984); *In re Winfree,* 34 B.R. 879, 885 (Bankr.M.D.Tenn.1983); *Manufacturers Hanover Trust Co. v. Garyantes,* No.

new enterprise which would involve a great deal of risk, he never met or spoke with the debtor. Furthermore, portions of the financial statement were unsigned.

In *In re Hunt,* 30 B.R. 425 (M.D.Tenn.1983), the debtor was also involved in a high-risk enterprise. The creditors were brokerage houses, and the debtor traded in bond futures. Despite the fact that several of the debtor's checks had been dishonored and his trading account showed a deficit of more than $13,000.00, one creditor allowed him to continue futures trading, resulting in a substantial loss. Another creditor allowed the debtor to trade in futures despite actual knowledge that his financial statement was incomplete.

Further, it appears that both creditors violated the Rules and Regulations of the Board of Trade for the City of Chicago. In dismissing the creditors' complaints, the court explained that "[a] lender cannot claim reasonable reliance on a financial statement which the lender knows is inaccurate or incomplete—particularly where the lender has information in its own files that confirms the inaccuracies and shows the need for further investigation or confrontation with its customer." *Id.* at 450.

Finally, in *In re Danesi,* 6 B.R. 738 (S.D.N.Y. 1980), the creditor lent money on the personal guarantee of the debtor, although his financial statement failed to list liabilities, and listed jointly held property. The court found that the financial statement, on its face, did not contain sufficient information on which to evaluate the debtor's financial status. The court also found that the debtor did not intend to deceive the creditor, but merely lacked the sophistication necessary to complete the form accurately.

Hence, it is clear that the cases cited by Esposito are inapplicable, for, rather than establishing the need for a trial to determine whether reliance by the Banks was reasonable under the circumstances, they merely illustrate when reliance by a lender is patently unreasonable.

18268–83, slip op. (Sup.Ct.N.Y.Co., Nov. 11, 1984).[7]

Esposito's unsupported allegations are insufficient to sustain his burden of establishing the existence of a genuine issue for trial. He has not produced any evidence that the Banks did not rely on the statements supplied by Esposito, or that the procedures they followed failed to comport with banking industry standards.

Thus the Banks' motion for summary judgment on the issue of the non-dischargeability of the debts owed by Esposito to the Banks must be granted.

### IV. *Denial of Discharge under Section 727*

The Banks have been joined by the Trustee in the action to deny Esposito's discharge pursuant to Code § 727(a)(3) and (7). These subsections provide that the bankruptcy court shall grant a debtor a discharge unless:

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such an act or failure to act was justified under all of the circumstances of the case ...

... [or]

(7) the debtor has committed any act specified in paragraph ... (3) ... of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act.

"Insider" is defined in section 101(28) and includes

(A) if the debtor is an individual—

. . . . .

(iv) corporation of which the debtor is a director, officer, or person in control. ...

 Again, the burden of proof under section 727(a)(3) and (7) belongs to the objectant on the issue of failure to keep or preserve adequate records. Once this burden has been satisfied, the debtor carries the burden of proof as to whether the failure was justified. *In re Savel*, 29 B.R. 854 (Bankr.S.D.Fla.1983).

 The purpose of section 727(a)(3) is to insure that the trustee and creditors are supplied with dependable information on which they can rely in tracing a debtor's financial history. The trustee and creditors are entitled to complete and accurate information showing what property has passed through the debtor's hands prior to his bankruptcy. *In re Mascolo*, 505 F.2d 274, 278 (1st Cir.1974); *In re Slocum*, 22 F.2d 282, 285 (2d Cir.1927); *In re Insull Utility Investments, Inc.*, 27 F.Supp. 887, 890 (S.D.N.Y.1934); *In re Isis Foods, Inc.*, 38 B.R. 45, 47 (Bankr.W.D.Mo.1983); *In re Devine*, 11 B.R. 487, 4 C.B.C.2d 732, 734 (Bankr.D.Mass.1981).

While the statute does not require "the keeping of an impeccable system of bookkeeping ... or records so complete that they would satisfy an expert in business," *Matter of Decker*, 595 F.2d 185, 187 (3d Cir.1979) (quoting *Johnson v. Bockman*, 282 F.2d 544, 546 (10th Cir.1960)), "[t]he

7. *Manufacturers Hanover Trust Company v. Garyantes* was a related action commenced by one of the plaintiffs herein against several other insiders of Cargo, for many of the same fraudulent acts that underly the present action. In that case, as in the instant case, the plaintiff argued that summary judgment should be granted because the defendants were collaterally estopped from relitigating the same issues that were decided in the criminal action. The defendants argued that collateral estoppel was inappropriate because reasonable reliance was an issue in the civil action that was not addressed in the criminal action. The court recognized that collateral estoppel did not apply to the issue of reasonable reliance. Nevertheless, the court granted summary judgment for the bank. In support of its ruling, the court explained that "the element of reliance has ... been demonstrated by clear and convincing evidence. Indeed, the affidavit, based on personal knowledge, of plaintiff's responsible employee, that the subject loan would not have been recommended had he known of Cargo's true financial status, is not competently disputed." The court's reasoning applies equally in the present case.

test is 'whether there [is] available written evidence made and preserved from which the present financial condition of the [debtor], and his business transactions for a reasonable period in the past may be ascertained.'" *Matter of Decker,* 595 F.2d at 187 (quoting *In re Underhill,* 82 F.2d 258, 260 (2d Cir.), *cert. denied,* 299 U.S. 546, 57 S.Ct. 9, 81 L.Ed. 402 (1936)).

By failing to controvert the Banks' 3(g) statement on this issue, Esposito has admitted that he caused the destruction of most of Cargo's books and records several months before he fled the country. The affidavit of Jerry B. Klein, the accountant retained by the Trustee to conduct an investigation of Esposito and Cargo, avers that "neither the Trustee nor myself was able to locate any of Cargo's books and records." Cargo is a substantial company in the stream of commerce, with liabilities in excess of $10 million and discoverable property totalling at least $3.5 million. Significantly, all of the following books and records, which are generally maintained by corporations of Cargo's type and size, are missing: general ledger, general journal, cash receipts journal, cash disbursements journal, accounts receivable ledger, accounts payable ledger, bank statements and cancelled checks, inventory and material cost records, invoices, purchase journals, sales invoices, sales journals, payroll records, stock certificate and minute books, complete loan records, fixed asset records, federal and state corporate income tax returns and other business and payroll tax returns.

The only financial materials remaining are certain checkbook stubs, loan files and correspondence, and certain loose pages from a safeguard payment journal reflecting payments to vendors.

It is clear that Esposito caused the destruction of the books and records of Cargo, with obvious intent to conceal his fraud. However, intent, while inferred, is not a requisite element to be specifically proved for a denial of discharge under § 727(a)(3). The only showing required under § 727(a)(3) is that the debtor has un-

justifiably destroyed any recorded information from which his financial condition or business transactions might be ascertained. In *In re Silverman* the court stated:

*Complete disclosure is in every case a condition precedent to the granting of the discharge.*

*Where the [debtor] was involved in many transactions of an extensive character, a substantially accurate and complete record of his affairs is a prerequisite to his discharge.* With obligations outstanding in large sums in the form of notes to banks and to others *it [is] a matter of importance that this [debtor] maintain records from which his financial condition [can] be ascertained.*

*Id.,* 10 B.R. 727, 731 (Bankr.S.D.N.Y.1981) (quoting *In re Underhill,* 82 F.2d 258, 259–60 (2d Cir.), *cert. denied,* 299 U.S. 546, 57 S.Ct. 9, 81 L.Ed. 402 (1936)).

While it is true that some financial documents remain in existence, they are of no value in reconstructing the financial affairs of Esposito or Cargo. Furthermore, it is not the intent of the Bankruptcy Code to inflict upon the Trustee the burden of sifting through every shred of the remaining records, no matter how great the cost, in the hope of piecing together a debtor's financial condition. *See In re Borron,* 29 B.R. 122, 127 (Bankr.W.D.Mo.1983); *In re Frank,* 14 B.R. 166, 168 (Bankr.S.D.Fla. 1981).

The discharge provisions of the Code were meant to relieve the honest debtor from his debts. *See Williams v. United States Fidelity and Guaranty Co.,* 236 U.S. 549, 555, 35 S.Ct. 289, 290, 59 L.Ed. 713 (1915); *In re Garman,* 643 F.2d 1252, 1257 (7th Cir.1980). Therefore the debtor should not be allowed to benefit from these provisions where, as here, he has so blatantly attempted to violate them. *See In re Schwartz,* 133 F.2d 216, 217 (7th Cir.1943). Furthermore, to allow Esposito to receive his discharge because of the mere fortuity that he and those acting un-

der his direction and control failed to destroy every scrap of information relating to Cargo's financial condition, or that the Trustee and his skillful staff might possibly be able to piece together some elements of Cargo's financial condition would stretch the discharge provisions of the Code to an absurd dimension.

### V. *Conclusion*

For the foregoing reasons summary judgment is granted in favor of the Banks and the Trustee. The debts due to the Banks are declared to be non-dischargeable; the debtor is denied his discharge; and the Banks may submit judgment as demanded in the complaint.

It is so ordered.