In re **Richard T. PORTER, Bankrupt.**

Richard T. **PORTER, Plaintiff,**

v.

**ARROW INVESTMENT CORPORATION,**
Defendant.

**Bankruptcy No. 77–00910–L.**

United States Bankruptcy Court, D. Massachusetts.

Dec. 9, 1981.

Joseph P. Foley, Boston, Mass., for Richard T. Porter.

Edmund M. Hurley, Hurley & Duggan, Boston, Mass., for Arrow Inv. Corp.

## MEMORANDUM RE DISCHARGEABILITY OF STATE COURT JUDGEMENT

THOMAS W. LAWLESS, Bankruptcy Judge.

The Court has before it a complaint filed by the plaintiff bankrupt, Richard T. Porter ("Porter") seeking a determination that Porter's debt of $22,229.36 to Arrow Investment Corporation ("Arrow") is discharged despite Porter's failure to schedule Arrow's claim on his bankruptcy petition. The history of this case is as follows.

On March 27, 1979, Porter was granted a discharge on all unsecured debts listed on

his Chapter VII petition of April 29, 1977. Porter's bankruptcy case was closed by this Court on June 13, 1979. On May 7, 1980, Porter was summoned by Arrow to a judgment debt examination in Newton District Court. Porter raised the defense of discharge in bankruptcy to which Arrow responded with the introduction of a copy of Porter's bankruptcy petition where, it has now been stipulated, Arrow was not listed as a creditor. Porter requested a continuance in Newton District Court and on June 2, 1980, filed with the Court an application to reopen his bankruptcy case pursuant to Rule 515. After notice and hearing, the Court allowed Porter's application to reopen on July 7, 1980, in order to consider whether Arrow's debt was discharged by Porter's bankruptcy proceeding.

Porter admits both the existence and the amount of Arrow's claim but argues that despite his failure to schedule Arrow's debt on his bankruptcy petition, Arrow's debt has been discharged because Arrow had notice and actual knowledge of the bankruptcy proceeding within the meaning of § 17(a)(3) of the Bankruptcy Act, 11 U.S.C. § 35(a)(3) (1970), which provides:

> A discharge in bankruptcy shall release a bankrupt from all his provable debts, whether allowable in full or in part, except such as... (3) have not been duly scheduled in time for proof and allowance, with the name of the creditor if known to the bankrupt, unless such creditor had notice of actual knowledge of the proceedings in bankruptcy;

Arrow denies having any such knowledge of Porter's bankruptcy proceeding until well after the bankruptcy case was closed.

A trial was held on the dischargeability of Porter's debt to Arrow. Based upon the testimony and documents received into evidence as well as the pleadings of the parties, I find the facts to be as set forth below.

Porter advances three arguments in support of a finding that the enforcement of Arrow's claim against Porter is barred by Porter's discharge in bankruptcy. Porter first asserts that Arrow had notice and actual knowledge of Porter's bankruptcy proceeding so as to fall within the exception enumerated in § 17(a)(3). In *Birkett v. Columbia*, 195 U.S. 345, 25 S.Ct. 38, 49 L.Ed. 231 (1904), the Supreme Court held that the dischargeability of an unscheduled debt under a predecessor to § 17(a)(3) depended upon whether the creditor received actual notice or knowledge of the bankruptcy "in time to give him an equal opportunity with other creditors—not a knowledge that may come so late as to deprive him of participation in the administration of the affairs of the estate, or to deprive him of dividends...." 195 U.S. at 350, 25 S.Ct. at 40. Arrow has denied such knowledge of the bankruptcy proceeding thereby presenting the bankrupt Porter with the burden of proof of establishing actual knowledge under § 17(a)(3) of the Act. *Hill v. Smith*, 260 U.S. 592, 43 S.Ct. 219, 67 L.Ed. 419, aff'g 232 Mass. 188, 122 N.E. 310 (1919).

I find that the plaintiff bankrupt has failed to satisfy his burden of proving that Arrow had notice and knowledge of Porter's bankruptcy proceeding so as to come within the exception enumerated in § 17(a)(3).

Porter next argues that by virtue of the fact that Amalek Exterminators Inc. ("Amalek") was duly scheduled[1] and noticed regarding Porter's bankruptcy proceeding, such notice to Amalek was sufficient to constitute notice to Amalek. Porter's argument is premised upon the notion that an undated agreement executed sometime pri-

---

1. On Schedule A of Porter's petition filed on April 29, 1977, Amalek's claim is listed as follows:

Amalek Exterminators, Inc. %Solomon M. Feldman Esquire Epstein, Goldstein & Feldman 100 State Street Boston, Mass. 02109 — Liquidated by Judgement, undisputed; 1963, Note — Amount of claim $154,159.28

or to 1974 between Amalek and Arrow[2] ("agreement") created a principle-agent relationship whereby Amalek became Arrow's collection agent for the purpose of collecting Arrow's ten percent interest in the underlying undisputed obligation that arose on or about August 12, 1963.

While it is apparent that Arrow retained a ten per cent interest in the underlying obligation and was thus entitled to notice of the filing of Porter's bankruptcy petition, Porter asserts that the agreement, particularly the provision granting Amalek "sole control of all efforts to collect on said Note..." designated Amalek as Arrow's authorized agent for the purposes of receiving notice under § 17(a)(3). Since the plaintiff cites no statutory authority under the Bankruptcy Act for the proposition that notice to a creditor's agent satisfies the notice and knowledge requirements of § 17(a)(3), it would appear that the Court must look to the common law of agency.

■ However, 11 U.S.C. § 1(11) of the Bankruptcy Act provides that the construction to be given the word "creditor", "unless the same be inconsistent with the context;"

> "'Creditor' shall include anyone who owns a debt, demand or claim provable in bankruptcy, and may include his *duly authorized agent, attorney* or *proxy.*" (emphasis added)

Notice and knowledge of a bankruptcy proceeding given to a creditor's authorized agent, attorney, or proxy is notice to that creditor under § 17(a)(3). *Keefauver v. Hevenor,* 163 App.Div. 531, 148 N.Y.S. 434 (1914); *American Southern Trust Co. v. Vester,* 183 Ark. 9, 17 Am.B.R. 495, 34

S.W.2d 747 (1931); *Katz v. Kowalsky,* 296 Mich. 164, 295 N.W. 600 (1941); *Lincoln Rochester Trust Co. v. Pearl,* 303 N.Y.S.2d 200, 60 Misc.2d 631 (1969); 134 A.L.R. 179; 1A *Collier On Bankruptcy* (14th ed. 1972) [hereinafter cited as "Collier"] ¶ 17.23 at 1693–1696.

Without deciding whether this agreement did in fact designate Amalek as Arrow's authorized agent so as to come within the § (1)(11) definition of 'creditor' (and concomitantly to constitute notice and knowledge to Arrow under § 17(a)(3)), events subsequent to the execution of this agreement and prior to the filing of Porter's bankruptcy petition clarify and define the Arrow-Amalek relationship for the purpose of determining the validity of the imputation of knowledge from Amalek to Arrow.

Sometime in 1974 Arrow, by its attorney Edward M. Hurley, Esq., brought suit in Suffolk Superior Court, Equity No. 89886, to recover the debt owed to it by Porter. Shortly thereafter Amalek, by its attorney Philip D. Epstein, Esq., of Epstein, Goldman and Feldman, filed a motion to intervene with Arrow as party-plaintiff in the action against Porter. Attached to Amalek's motion to intervene was a copy of the Arrow-Amalek agreement as evidence of Amalek's ninety per cent interest in the underlying obligation of Porter; however Amalek did not dispute or deny Arrow's right or ability to sue and collect on said note in Arrow's own behalf. On March 19, 1974, the Suffolk Superior Court entered a judgement *pro confesso* against Porter for the plaintiffs Arrow and Amalek. Separate executions were issued against Porter on August 6, 1974, in favor of Arrow in the amount of

2. The agreement, signed by both parties, reads as follows:

ARROW INVESTMENT CORPORATION agrees to sell AMALEK EXTERMINATORS, INC. ninety percent interest in its share of the balance due in the participation in the Note of Carbonation Controls for Ten thousand ($10,000.) dollars and assumption of legal expenses to date of $1600.00. The $10,-000.00 shall be in form of five (5) year Note with interest at 12% per annum. AMALEK shall have sole control of all efforts to collect

on said Note and shall pay all expenses of such collection. If there is any recovery the ten per cent belonging to ARROW shall first be applied to repayment of expenses of AMALEK. The balance of the 10% after expenses shall be paid to ARROW and the other 90% to AMALEK. ARROW shall only be liable for expenses to the extent of its recovery and under no circumstances will ARROW be responsible for expenses beyond its share of the recovery even if recovery is insufficient or non-existent. ARROW agrees to cooperate as far as it is able in all actions

$17,554.25[3] and in favor of Amalek in the amount of $154,159.28 (these amounts being ten per cent and ninety per cent, respectively, of the underlying obligation owed by Porter).

The ability to impute Amalek's knowledge of Porter's bankruptcy proceeding to Arrow becomes attenuated in light of the judgement and separate executions issued by the Suffolk Superior Court. While the judgement was obtained *pro confesso* against Porter, Porter admits[4] and I hereby find that he had knowledge of the proceeding at the time when it was commenced by Arrow.

I also find that Porter, at the time of the filing of his bankruptcy petition, knew that separate executions had been issued and that Arrow held one of them. This finding is supported by Porter's testimony[5] and by Porter's assertion in his application to re-open his case that Arrow was omitted from his petition by reason of a scrivener's error by Porter's bankruptcy attorney in transcribing the list of creditors from information supplied to that attorney by Porter.[6] The basis of this argument presupposes Porter's knowledge of Arrow's judgement at the time of the filing of his petition.

Porter argues that Amalek's authority to represent Arrow's claim and the imputation of knowledge of matters therein was undiminished by Arrow's judgement and separate execution upon that judgement. In accord with general principles of agency law, knowledge of a creditor's agent of the filing of a bankruptcy petition will be imputed to that creditor, but only where that creditor received this knowledge while acting within the scope of his agency and at a time when the agency relationship was in existence.[7] Any agency relationship which did exist between Arrow and Amalek ceased to exist for the purposes of § 17(a)(3) when Amalek acquiesced to Arrow's suit and later execution upon its ten per cent interest in the underlying obligation owed by Porter to Arrow. The 'sole control' of collection efforts given to Amalek by the undated agreement was mutually rescinded by the subsequent actions of Amalek and Arrow. Porter's knowledge of Arrow's suit and the execution thereon render Porter's reliance on the undated agreement when compiling his list of creditors faulty and unreasonable.

It has been found that an attorney who is employed by a creditor to obtain a judgment against a debtor, but not in any way employed or authorized to represent that creditor in a subsequent bankruptcy proceeding involving that debtor, is not that creditor's agent for the purpose of receiving notice of the bankruptcy proceeding. *Continental Purchasing Co. v. Norelli*, 133 N.J.L. 550, 45 A.2d 310, aff'd 135 N.J.L. 93, 48 A.2d 816 (1946); *Interstate Credit League v. Widdison*, 50 Idaho 493, 20 Am. B.R. (N.S.) 105, 297 P. 1106 (1931); *Vital v. Jandorf*, 126 Misc. 124, 7 Am.B.R. (N.S.) 122, 212 N.Y.S. 548 (1925); *Strickland v. Capital City Mills*, 74 S.C. 16, 54 S.E. 220 (1906); 1A *Collier*, ¶ 17.23 at 1692–1693.

In the case at bar an even clearer situation is presented. Neither Amalek or its attorney represented Arrow in the action where the judgement and execution were obtained and there is no evidence presented that Arrow authorized Amalek or its attorney to collect that judgement and execution after it was rendered. Amalek

---

taken by AMALEK as long as ARROW is not involved in any expense or liability.

3. On December 4, 1979, Arrow obtained a second execution on its judgment in the amount of $22,229.36. The difference in the two executions is accrued interest.

4. Record of November 25, 1980, trial ("Record") at 28.

5. Record at 47:
   *Question* (By Edward M. Hurley):

"You knew that there were two executions issued?"
*Answer* (Richard Porter):
"I probably did. I'm not denying it."

6. This argument will be addressed later in this memo.

7. *Application of Keilly*, 47 Misc.2d 99, 262 N.Y. S.2d 310 (1965); *Santaga v. Coppersmith*, 1 B.C.D. 232, 235, (E.D. Wisconsin 1974); 1A *Collier*, ¶ 17.23 at 1693; 8 *Remington on Bankruptcy*, at 237.

**234**

had no indication from Porter's petition and schedules that it was being held responsible for representing Arrow in the bankruptcy proceeding because the amount of Amalek's scheduled claim[8] was the exact amount of Amalek's execution and in no way represented Arrow's separate execution in the amount of $17,554.28.

■  Porter was obligated to use diligence and due care when scheduling his creditors on his petition. *In re Venson*, 234 F.Supp. 271, aff'd 337 F.2d 616 (5th Cir. 1964); *Moureau v. Leaseamatic Inc.*, 542 F.2d 251 (5th Cir. 1976); *Parker v. Murphy*, 215 Mass. 72, 102 N.E. 85 (1913); 1A *Collier* ¶ 17.23 at 1680–1682. At the time of compiling his list of creditors on his petition, I have found that Porter had knowledge of Arrow's judgement and execution. In the exercise of due care "a bankrupt is well advised to put down every conceivable obligation without any reservation." *Commercial Banking Corp. v. Martel*, 123 F.2d 846, 847 (2nd Cir. 1941).

■  Porter's debt to Arrow is not discharged where Arrow lacked knowledge of the bankruptcy proceeding in time to participate in the administration of this case. The absence of a dividend does not relieve a bankrupt of his responsibilities of duly scheduling his creditors. *Milando v. Perrone*, 157 F.2d 1002 (2nd Cir. 1946). Nor should the absence of a dividend deny an unscheduled creditor with the due process of law that one is entitled to before one's property is taken away by a court.

■  Porter's final argument is that his failure to schedule Arrow's claim should be excused because said omission was due to a scrivener's error by the attorney who prepared the bankrupt's petition. The bankrupt has submitted no evidence to support this contention nor has Porter cited any authority for the proposition that negligence of counsel will constitute excusable neglect under either § 17(a)(3) or Fed.R. Civ.Pro. 60(b).[9] I find that this argument to be without merit in these circumstances

8.  $154,159.28

and that Arrow's claim against Porter has not been discharged by Porter's bankruptcy proceeding.

9.  Bankruptcy Rule 924 incorporates Rule 60 of the Federal Rules of Civil Procedure.