**In re Matt S. TURPIN, d/b/a Taco Fiesta, d/b/a Mama's Italian Restaurant, d/b/a Daddy's Lounge, d/b/a Sugar Bear Donut Shoppe, Debtor.**

**M.R. TOUPIN, INC., Plaintiff,**

v.

**Matt S. TURPIN, Defendant.**

**Bankruptcy No. 91–01780–8P7.
Adv. No. 91–00329.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

July 2, 1992.

**492**

Jeffrey A. Krueger, Clearwater, Fla., for plaintiff.

Rafael A. Robles, Spring Hill, Fla., for defendant.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 case and the matter under consideration is an adversary proceeding filed by M.R. Toupin, Inc., challenging the right of Matt Turpin (Debtor) to receive his general discharge. The complaint filed by the Plaintiff sets forth four distinct grounds, any one of which, if established, would warrant a denial of the Debtor's discharge.

Count I of the Complaint is based on 11 U.S.C. § 727(a)(2) and alleges that within one year of the date of the filing of his Petition, the Debtor, with the intent to hinder, delay or defraud creditors, concealed

his interest in certain assets. Count II is based on § 727(a)(4)(A) and alleges that the Debtor knowingly and fraudulently made false oaths in connection with this case by not disclosing his interest in certain assets on his Schedules and Statement of Financial Affairs. Count III is based on § 727(a)(5) and alleges that the Debtor has failed to satisfactorily explain the loss of certain of his assets to meet his liabilities. Count IV is based on § 727(a)(3) and alleges that the Debtor failed to keep and preserve books and records from which his financial condition could be ascertained. Based on the foregoing, the Plaintiff contends that the Debtor's discharge should be denied.

The facts which are relevant to the resolution of this matter, as established at the final evidentiary hearing, may be summarized as follows:

The Debtor filed his voluntary petition for relief under Chapter 7 of the Bankruptcy Code on February 12, 1991. As noted on the caption of the Petition, the Debtor had been doing business as Taco Fiesta, Mama's Italian Restaurant, Daddy's Lounge and the Sugar Bear Donut Shoppe. The record reveals that in addition to these enterprises, the Debtor had also owned and operated a restaurant known as Sand Castle Pizzeria (Sand Castle) located in Treasure Island, Florida.

According to the Debtor, he sold Sand Castle Pizzeria sometime in May, 1986, and used $33,000 of the proceeds of Sand Castle to purchase a restaurant located at 414 East Liberty Street in Brooksville, Florida, known as The Blueberry Patch Restaurant, also known as The Blueberry Patch Tea Room (Blueberry Patch) and an option to purchase the underlying real estate. It is undisputed that on May 30, 1986, Debtor and his wife, Nancy Turpin, entered into a 15 year "Lease/Option" agreement with the owner of the real estate on which the Blueberry Patch was located. (Pl's Exh. 2). According to the Debtor, on November 16, 1986, he assigned his interests in the Blueberry Patch "lease/option" agreement to his wife for "$10, love and affection." (Debtor's Exh. 2).

Despite Debtor's contention that he assigned his interest in the Blueberry Patch to his wife in 1986, the Debtor's joint Federal Income Tax returns for the years 1986, 1987 and 1988 showed on Schedule C, that the proprietor of the Blueberry Patch was the Debtor, and the social security number of the proprietor on Schedule C for each of these tax years was the Debtor's. In addition, Schedule SE for the Computation of Social Security Self–Employment Tax accompanying each of these tax returns indicated that the name of the person with self-employment income was the Debtor. It should also be noted that in connection with State Court litigation commenced by the Plaintiff against the Debtor, the Debtor executed an affidavit on March 24, 1989, stating that he had "purchased goods from the Plaintiff ... over the past several years for both my restaurants, The Blueberry Patch Tea Room and Mama's." (Pl's Exh. 7).

Moreover, on January 19, 1988, the Debtor prepared and filed with the Hernando County Tax Collector an Application for County Occupational License which listed the Debtor as the owner of the Blueberry Patch. (Pl's Exh. 5). The manager of the Blueberry Patch, Ms. Paula Hogan, prepared the Occupational License Application for 1989 and listed the Debtor as owner. (Pl's Exh. 6). It is important to note that the official records of Hernando County indicate that as of February of 1989, the Debtor was the owner of the Blueberry Patch. Further, official County records indicate that on December 12, 1990, the Debtor and his wife transferred the license for the Blueberry Patch to Nancy Turpin's Blueberry Patch, Inc., a Florida corporation organized on April 26, 1989. (Pl's Exh. 4).

On May 17, 1988, the Debtor prepared and signed an application for a surety bond with State Farm Fire and Casualty (Pl's Exh. 9). In the application, the Debtor stated that he owned a business at 414 East Liberty valued at $325,000. It should be noted that this is the address of the Blueberry Patch. The Debtor also stated in the application that he owns properties

in Michigan valued at $125,000 and diamonds and gold valued at $15,000.

On March 15, 1989, the Debtor signed a personal financial statement (Financial Statement) which listed as assets of the Debtor the Blueberry Patch, valued at $385,000, real property located in Jackson, Michigan, commonly known as 1616 Pringle Street, and 720 Henretta Street, valued at $14,500 and $14,700, respectively, a 1988 Mercury Topaz valued at $11,900, furniture valued at $40,000, and diamonds and gold having a value of $15,000. (Pl's Exh. 8). According to the Debtor, this statement was prepared by a third party as part of a biographical profile to be distributed in Third World countries for the purpose of attracting investors in a business venture in which the Debtor was involved, and was not intended to be a personal financial statement upon which any creditor was to extend credit. The Debtor also contends that the assets listed on the Financial Statement are actually owned by his wife, but the Financial Statement indicated that the assets were owned by the Debtor because investors in Third World Countries have a certain prejudice against women.

The Debtor claims that he no longer owns the Pringle Street property as he transferred it to his wife in 1976. The Debtor claims he no longer owns the Henretta Street property as he and his wife sold the property to a third party who granted the Debtor and his wife a mortgage on the property. However, the Official Records for Jackson County, Michigan, indicate that the 1616 Pringle Street property was quitclaimed from Michigan Bank Midwest, as Grantor, to the Debtor and Nancy Turpin on February 14, 1984 (Pl's Exh. 13). Further, the Official Records indicate that as of September 17, 1991, the Debtor and his wife are the owners of both Michigan properties. (Pl's Exh. 12).

Regarding the Mercury Topaz listed on the Financial Statement, the record reveals that the Debtor traded this automobile for a 1989 Ford Escort on August 16, 1990, seven months prior to the filing of the Petition. (Pl's Exh. 15). It is undisputed that in addition to trading in the Mercury

Topaz, the Debtor paid $1,000 in cash to purchase the Escort. According to the Debtor, the Escort was a gift to his son. (Pl's Exh. 16).

After filing his voluntary Petition the Debtor filed his Schedules of Assets and Liabilities and Statement of Financial Affairs for Debtor Engaged in Business, which were signed by the Debtor under penalty of perjury. It is without dispute that on the Schedules, the Debtor failed to list the furniture listed on the Financial Statement, the gold and diamonds listed on the Financial Statement and Surety Bond Application, and the two Michigan properties.

On the Debtor's Statement of Financial Affairs, the Debtor stated under oath in response to question 14 that he had made no transfers of property within the year preceding the filing of his Petition. However, it is undisputed that the Debtor transferred his interest in the Mercury Topaz in August of 1990, within one year of the filing of the Petition. Further, the Debtor concedes that he sold certain equipment he had purchased for the Blueberry Patch in late summer or early fall of 1990. The Debtor also failed to disclose on the Statement of Financial Affairs that he had done business as the Blueberry Patch and Sand Castle Pizzeria within the six years preceding the filing of the Petition. The Debtor also stated on the Statement of Financial Affairs that he did not have a safety deposit box in the past two years and had not been involved in any litigation in the past year. However, the record reflects that the Debtor had leased a safety deposit box at First Florida Bank in Brook Plaza and had used the safety deposit box as late as January 9, 1990, approximately 13 months prior to filing his Petition for Relief under Chapter 7. (Pl's Exh. 20 and Debtor's testimony).

Contrary to the Debtor's Statement of Financial Affairs, the record also indicates that the Debtor was a party to two lawsuits within one year prior to his Petition. On April 10, 1989, WWJB Radio Station filed a complaint in the Hernando County Court against the Debtor and Mama's Ital-

ian Restaurant. This case was active until its dismissal by the Court on August 17, 1990, only seven months prior to the filing of the Debtor's Petition (Pl's Exh. 18). The record also reflects that on January 20, 1990, State Farm Fire and Casualty filed an action against the Debtor d/b/a Blueberry Patch Restaurant and Mama's Italian Restaurant in the Hernando County Court. (Pl's Exh. 19).

Based on these facts, the Plaintiff contends that the Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(2)(A), (a)(3), (a)(4)(A), and (a)(5). These subsections of § 727 provide as follows:

§ 727. Discharge

(a) The court shall grant the debtor a discharge, unless— ...

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed— ...

(A) property of the debtor, within one year before the date of the filing of the petition; or ...

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case; ...

(4) the debtor knowingly and fraudulently, in or in connection with the case— ...

(A) made a false oath or account; ...

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities; ...

The party objecting to the Debtor's discharge has the burden of proving by a mere preponderance of the evidence that the Debtor's discharge should be denied. *Grogan v. Garner*, 498 U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). This Court is satisfied that the Plaintiff has more than sustained this burden.

At the outset it should be noted that deliberate omissions of assets from the Debtor's Schedules warrant a denial of the Debtor's discharge under § 727(a)(4)(A). *See In re Urban*, 130 B.R. 340 (Bankr.M.D.Fla.1991). When a Debtor makes numerous omissions in his Statement of Affairs and Schedules, the omissions together may constitute a pattern demonstrating a reckless disregard for the truth. *In re Clawson*, 119 B.R. 851 (Bankr.M.D.Fla.1990). While it is always difficult to prove that a false oath was knowingly made, an inference of such intent can be drawn from circumstances surrounding the Debtor. *In re Sklarin*, 69 B.R. 949 (Bankr.S.D.Fla.1987). Not only does this record reveal a pattern of omissions which indicate a reckless disregard for the truth, but this Court is satisfied that the Debtor knowingly and fraudulently failed to disclose several assets of substantial value.

This record more than sufficiently establishes that the Debtor owns the two parcels of real property in Michigan and the gold, diamonds and the furniture described previously. However, the Debtor failed to disclose these assets on his Schedules of Assets. In addition, the Debtor made a false oath when he stated that he had made no transfer of property within the year preceding the filing of the Petition. The record is clear that the Debtor transferred the Mercury Topaz to his son and sold equipment used at the Blueberry Patch during this time period. The Debtor made yet another false oath when he failed to disclose that he had conducted business as the Blueberry Patch and Sand Castle Pizzeria in the six years preceding the filing of his Petition as required by the Statement of Financial Affairs. Nor did the Debtor disclose the pending litigation with WWJB Radio and State Farm Fire and Casualty or the existence of the safety deposit box as

required by the Statement of Financial Affairs.

In sum, this Court is satisfied that the omissions were knowing and fraudulent or, at the very least, are so numerous that they constitute a pattern demonstrating reckless disregard for the truth sufficient to warrant a denial of discharge pursuant to § 727(a)(4)(A).

Even if this Court accepted the Debtor's explanation that he did not own the Michigan properties, furniture, diamonds and gold as of the date of the filing of the Petition, this Court is satisfied that the Debtor has not sufficiently explained the disposition of these assets, and therefore the Debtor's discharge should also be denied pursuant to § 727(a)(5). There is no question that the Plaintiff established that the Debtor had a cognizable ownership interest in the Michigan properties, the gold and diamonds and the furniture at a time not too far removed from the date of the filing of the Petition. Therefore, the burden shifts to the Debtor to satisfactorily explain the loss of these assets. *In re Chalik*, 748 F.2d 616 (11th Cir.1984) To be satisfactory, the explanation must be strong enough to convince the trier of fact. *In re Goblick*, 93 B.R. 771 (Bankr.M.D.Fla. 1988) An uncorroborated explanation is insufficient. *In re Sklarin*, 69 B.R. 949 (Bankr.S.D.Fla.1987).

As to the Michigan properties, the Debtor failed to introduce into evidence any written deeds or mortgages or corroborating testimony to substantiate his contention that he transferred one of the properties to his wife and the other to a third party and retained a mortgage. As to the gold and diamonds and furniture, there is no question that the Debtor affirmatively stated that these assets were his own in May of 1988 (date of Financial Statement) and now contends that these assets have always been owned by his wife. However, the Debtor again failed to present any evidence whatsoever, either by testimony of the wife or written documentation, that this was in fact true.

The Debtor's discharge may also be denied under § 727(a)(3). There is absolutely no question that the Debtor has not provided books and records from which his financial condition could be ascertained. The Debtor owned and operated six restaurants in the six years preceding his Petition. The Debtor conceded that he either did not maintain records for these businesses or threw any records in existence away. According to the Debtor, there was no reason to keep records for these businesses as all the businesses, with the exception of Blueberry Patch, had lost money and gone out of business. However, the fact that a Debtor is engaged in a failing business is not sufficient to relieve a Debtor from the statutory requirement of providing adequate books and records. *See In re Porter*, 16 B.R. 229 (Bankr.Mass.1981).

Finally, as to § 727(a)(2), this Court is satisfied that the Plaintiff met its burden of proving that the Debtor has concealed his interest in the Michigan properties, the furniture, and gold and diamonds, by failing to disclose the same on his Schedules filed in this case. The Debtor's intent to hinder, delay or defraud a creditor must be actual intent, the finding of which may be based on circumstantial evidence or on inferences drawn from the course of conduct. *In re Devers*, 759 F.2d 751 (9th Cir.1985). However, where assets of substantial value are omitted from the Schedules, the conclusion that they were omitted purposely with the fraudulent intent to conceal the assets in question may be warranted. *In the Matter of Galbraith*, 17 B.R. 302 (Bankr.M.D.Fla.1982); *In re Topping*, 84 B.R. 840 (Bankr.M.D.Fla.1988). That is the case here, and therefore the Debtor's discharge must also be denied pursuant to § 727(a)(2).

A separate Final Judgment shall be entered in accordance with the forgoing.