140 B.R. 49 (1992)
In re Leibel LEDERMAN, Lawrence Rezak, Linda Rezak, Howard Weiss, Debtors.
CHARTER FEDERAL SAVINGS ASSOCIATION by the RESOLUTION TRUST CORPORATION, Plaintiff,
v.
Lawrence REZAK, Defendant.
Bankruptcy Nos. 190-10380-352, 190-11923-352, 190-11924-352 and 190-11963-352, Adversary No. 190-1396.
United States Bankruptcy Court, E.D.N.Y.
May 18, 1992.
*50 Zeisler & Zeisler, P.C., Bridgeport, Conn., for Lawrence Rezak.
Moses & Singer, New York City, for Resolution Trust Corp.

Decision on Plaintiff's Motion for an Order Compelling Discovery
MARVIN A. HOLLAND, Bankruptcy Judge:
Plaintiff moves to compel discovery with regard to its First Production Request which defendant has refused to comply with based on his Fifth Amendment privilege against self-incrimination and on the additional ground that it is duplicative and unduly burdensome. We grant the motion and order the Debtor to produce all of the requested documents not previously produced.
This matter is subject to bankruptcy court jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a) and the Order of Referral of Matters to Bankruptcy Judges for the District, 69 B.R. 186. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

BACKGROUND
1. The defendant herein, Mr. Lawrence Rezak (hereinafter "Rezak"), is an individual chapter 11 debtor whose case was consolidated for procedural purposes only with three closely related individual chapter 11 cases (hereinafter "the Debtors").
2. All four cases were originally filed as involuntary chapter 7 cases that were converted to voluntary chapter 11 cases.
3. "Prior to the filing of the petition, the Debtor [Rezak] was engaged in the business of purchasing, managing, syndicating and selling real estate property and real estate property interests in the tristate area. Many of the transactions were undertaken in conjunction with the Debtor's business partners, Leibel Lederman ("Lederman") and Howard Weiss ("Weiss")." Fourth Amend.Disc.Stat. at 2.
*51 "Many of the assets of the Debtors, however, are in the form of less than 100% interests in the Related Entities [corporations, general and limited partnerships] in which the Related Entities own purchase money second and third mortgages derived from the sale of property formerly owned by the Related Entities, or real property assets." Fourth Amend.Disc.Stat. at 6.
4. The involuntary petitions against the Debtors were filed following an unsuccessful attempt at an out-of-court common law composition. Fourth Amend.Disc.Stat. at 4.
5. On March 1, 1991 the court signed an order approving the Fourth Amended Disclosure Statement filed in the individual cases and on April 19, 1991 the court signed the order confirming the reorganization plans. (hereinafter "Confirmation Order").
6. The confirmed plans provide for consolidation of Debtors' assets. "On confirmation, all non-exempt assets of each of the Debtors will be placed in the Joint Liquidating Trust. Under the Joint Plan, any claim against any of the Debtors would be entitled to a Single Claim for said amount against the Trust." Fourth Amend.Disc.Stat. at 12; Second Amend. Joint Plan, §§ 1.18, 4.1, 4.2.
7. It is clear that pursuant to the confirmed plan, Rezak, as well as the other Debtors, transferred to the Liquidating Trust his interests in the Related Entities, or the value of such interests. See Fourth Amend.Disc.Stat. at 12, 14, 15, Ex. A; Second Amend. Joint Plan, §§ 1.18, 1.29, 4.1, 4.2. "Because a substantial portion of the assets consists of jointly held assets in partnership and other entities, the coordinated and combined efforts of the Debtors in liquidating assets including the underlying assets beneficially or indirectly held by the Debtors, are essential. . . .". Fourth Amend.Disc.Stat. at 15 (emphasis added).
8. The plan provides that confirmation does not automatically result in Rezak's discharge. Second Amend. Joint Plan § 6.1. It provides, however, that dischargeability of individual claims would be subject to 11 U.S.C. § 523 and that Rezak may, no earlier than six months after the effective date of the plan, "apply by motion on at least 30 days' notice to all creditors for an order granting a discharge. Each creditor retains the right to file an objection to such motion . . .". Second Amend. Joint Plan §§ 6.2, 6.3. To this date, Rezak has not filed a motion seeking his discharge.

The Dischargeability Proceeding
1. Charter Federal Savings Association by its conservator, the Resolution Trust Corporation (hereinafter "RTC"), filed a complaint dated October 31, 1990, and an amended complaint dated November 20, 1990, seeking a determination that a debt owed to it by Rezak is non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(B), 523(a)(4).[1]
2. The complaint alleges that at the time of the filing of the involuntary petition Rezak owed Charter Federal the sum of $228,718.55. The debt was incurred as a result of two advances of money made by Charter Federal to Rezak on June 15, 1989 and July 3, 1989.
3. RTC claims that in order to induce Charter Federal to approve Rezak a credit line and to extend him funds, Rezak used written statements respecting his financial statement which were materially false and were known by Rezak to be false. RTC argues that Charter Federal reasonably relied on written materials produced by Rezak in its determination to establish the *52 requested credit line. Were it not for the false representation, RTC argues, Charter Federal would not have extended Rezak the line of credit.
4. Rezak's answer denies all of the allegations in the complaint.
5. RTC served on Rezak its "First Production Request" in which it requested Rezak to produce and allow RTC to inspect and copy a substantial amount of documents. Rezak, in response, objected to the request on the ground of his privilege against self-incrimination and due to the duplicative and burdensome nature of it. RTC then moved by notice of motion, pursuant to Fed.R.Civ.P. 34 and 37, as made applicable by Fed.R.Bankr.P. 7034 and 7037, to compel Rezak's compliance with the production request.
6. Prior to hearing argument on the motion, the court requested the parties to brief the applicability of the Fifth Amendment privilege to document production requests. The parties, however, did much more than that. They briefed a myriad of issues ensuing from Rezak's assertion of the Fifth Amendment privilege. We feel, therefore, that the entire issue is ripe for disposition.

DISCUSSION
The parties do not dispute the applicability of the Fifth Amendment privilege to a production of documents request, see C. Wright, A. Miller, Federal Practice and Procedure: Civil, § 2018 at 142 and n. 17 (1970 & 1992 Supp.), and it is beyond dispute that the privilege applies in bankruptcy context. See, Martin Trigona v. Belford (In re Martin Trigona), 732 F.2d 170, 175 (2d Cir.1984); Marine Midland Bank v. Endres (In re Endres), 103 B.R. 49, 53 (Bankr.N.D.N.Y.1989); Olson v. Potter (In re Potter), 88 B.R. 843, 849 (Bankr.N.D.Ill. 1988); In re Connelly, 59 B.R. 421, 430 (Bankr.N.D.Ill.1986).
Our reasons for overruling Rezak's Fifth Amendment privilege objection are as follows:
(i) After a scholarly and in-depth review of the Fifth Amendment privilege case law, Judge Yacos held in In re Fairbanks, 135 B.R. 717 (Bankr.D.N.H.1991):
The resolution of the conundrum mentioned above is to simply recognize that there are some regulatory disclosure requirements in modern society that have to be complied with even though there may in fact be some incidental incriminating effects upon the party required to comply  provided that the regulatory requirements in question are strictly noncriminal in nature and have general applicability throughout the society. That is essentially what the Supreme Court did in Baltimore City Dept. of Social Serv. v. Bouknight, 493 U.S. 549, 110 S.Ct. 900, 107 L.Ed.2d 992 (1990).
Fairbanks, 135 B.R. at 730.
In the case before this court the disclosure is required as part of noncriminal statutory scheme for administration of bankruptcy estates which requires such disclosure for liquidation of the same and in no sense is aimed particularly at prospective criminal defendants.
Fairbanks, 135 B.R. at 732.
And as the court concluded:
It certainly would be an irrational spectacle to have an individual come into the bankruptcy courts and obtain a discharge from his liabilities without ever disclosing his assets on the grounds of self-incrimination.
Fairbanks, 135 B.R. at 733.
We agree. The Bankruptcy Code provides for discharge of a debtor's debts, allowing him or her to obtain a "fresh start" while at the same time providing for disclosure and examination so as to insure maximum recovery for creditors. Distribution and discharge are at the heart of the bankruptcy process. See Community National Bank v. Persky (In re Persky), 134 B.R. 81, 96 (Bankr.E.D.N.Y.1991), citing to In re Klein, reported in Nelson v. Carland, 42 U.S. (1 How.) 265, 11 L.Ed. 126 (1843); In re Central Funding Corp., 75 F.2d 256, 260 (2d Cir.1935).
The House report accompanying the Bankruptcy Reform Act describes section 727 as "the heart of the fresh start provisions of the bankruptcy law."
*53 Collier on Bankruptcy, § 727.01 at 727-6 (15th ed. 1991).[2] See also, Texaco v. Louisiana Land & Exploration Co., 136 B.R. 658, 662 (M.D.La.1992). For our purposes both section 727 and section 523 should be viewed as standing at the heart of the bankruptcy process; together they define the extent of the debtor's discharge and the scope of the fresh start afforded to it.
We believe that a debtor cannot enjoy the benefits of the bankruptcy process while avoiding its burdens. Any other approach would produce an unlevel playing field tilted in the debtor's favor.
The adversary proceedings brought under § 523 and § 727 of the Bankruptcy Code seek to deny the debtor discharge or except debts from discharge. The debtor cannot use the bankruptcy court to broaden the benefits afforded to an accused by the Fifth Amendment. To do so would allow the debtor to use the Fifth Amendment as a shield, while impermissibly using the Bankruptcy Code as a sword with which to take an unfair advantage of creditors.
Piperi v. Gutierrey (In re Piperi), 137 B.R. 644, 647 (Bankr.S.D.Tex.1991). Moreover, in § 727(a)(6)(B) Congress specifically preserved a debtor's rights to raise the privilege against self-incrimination, absent a grant of immunity, with respect to oral examination and testimony without prejudice to the right to a discharge. The lack of a similar provision in § 523 leads to the inescapable conclusion that none was intended.[3]
Furthermore, since the relief of a fresh start is intended to benefit an honest debtor, see State Bank of India v. Chachra (In re Chachra), 138 B.R. 397 (Bankr. S.D.N.Y.1992), and since a court sitting in a civil case is permitted to draw adverse inferences from a defendant's invocation of the Fifth Amendment privilege, see, National Acceptance Corp. v. Bathalter, 951 F.2d 349 (Table) (6th Cir.1991), citing to National Acceptance Corp. v. Bathalter, 705 F.2d 924, 929-30 (7th Cir.1983); Erie Materials Inc. v. Oot (In re Oot), 112 B.R. 497 (Bankr.N.D.N.Y.1989), Rezak cannot defeat RTC's complaint by invoking his Fifth Amendment privilege. See Amsave Credit Corp. v. Marceca (In re Marceca), 131 B.R. 774, 778 (Bankr.S.D.N.Y.1991) ("[A]n individual debtor in a bankruptcy case, who is also a target of criminal investigation, might be required to relinquish a fifth amendment privilege against self-incrimination in order to avoid losing a discharge in bankruptcy"); Raymond James & Assoc. v. Metzgar (In re Metzgar), 127 B.R. 708, 711 (Bankr.M.D.Fla.1991). See also, C. Wright, A. Miller, Federal Practice and Procedure: Civil, § 2018 at 144 (1970 & 1992 Supp.) ("though the language of waiver has been used . . . what seems to be contemplated is that the action will be dismissed or a default judgment given or a particular issue foreclosed").[4] But cf., In re Potter, 88 B.R. at 850.
(ii) Rezak has waived his Fifth Amendment privilege regarding the requested documents either by having previously disclosed them or by not having raised the privilege early enough to preserve it.
RTC's production request includes forty items, and covers, for the most part, the 1988-1990 period. In general the request seeks the production of documents which include: Rezak's financial statements, Rezak's bank accounts, Rezak's loan receivables, Rezak's assets as well as interests in the Related Entities, Rezak's personal property, Rezak's deferred compensation statement and Rezak's liabilities. See, Ex. A to the Motion for Order Compel. Disc.
Rezak has either unconditionally disclosed all the requested documents or *54 promised to disclose them, and is therefore barred from now objecting to the requested production.
With regard to the requested items which may not have been previously disclosed, or to the extent that such commitment may not be legally binding, the privilege has been lost or waived for failure to have raised it timely. As the Supreme Court held: "a witness loses the privilege by failing to claim it properly even though the information being sought remains undisclosed when the privilege is claimed." Garner v. United States, 424 U.S. 648, 653, 96 S.Ct. 1178, 1182 n. 8, 47 L.Ed.2d 370 (1976) (emphasis added). See also, United States v. St. Pierre, 132 F.2d 837, 840 (2d Cir.1942); In re Connelly, 59 B.R. 421, 431 (Bankr.N.D.Ill.1986). As will be seen hereinafter, in the context of this entire bankruptcy case Rezak's assertion of the privilege could not have been more untimely.
Courts are split on the extent, if any, to which prior voluntary acts may serve as a waiver of the privilege. See, Henry, District of Columbia Court of Appeals Project on Criminal Procedure, 28 How. L.J. 85 (1985); Alan R. Gilbert, Annotation, Loss of Privilege Against Self-Incrimination by Individual As Result of His Action or Inaction Occurring When He Was Not Accused-Supreme Court Cases, 47 L.Ed.2d 922 (1977 & 1991 Supp.); Annotation, Testifying in Civil Proceeding as Waiver of Privilege Against Self-Incrimination, 72 A.L.R.2d 830 (1960, 1984 & 1991 Supp.); Michael A. DiSabatino, Annotation, Right of Witness In Federal Court to Claim Privilege Against Self-Incrimination After Giving Sworn Evidence on Same Matter in Other Proceedings, 42 A.L.R.Fed. 793 (1979 & 1991 Supp.).
As the Court of Appeals for this Circuit held, however, "[t]here is no doubt that a waiver of the fifth amendment's privilege against self-incrimination may, in an appropriate case, be inferred from a witness's prior statements with respect to the subject matter of the case." Klein v. Harris, 667 F.2d 274, 287 (2d Cir.1981), disagreed with on other grounds, Daye v. Attorney General, 696 F.2d 186 (2d Cir.1982), en banc, cert. denied 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984). See also, Edmond v. Consumer Protection Division (In re Edmond), 934 F.2d 1304, 1307-8 (4th Cir. 1991); Holiday Bank v. Scarfia (In re Scarfia), 104 B.R. 462 (M.D.Fla.1989) aff'd 129 B.R. 671 (M.D.Fla.1990); Norbank v. Kroh (In re Kroh), 87 B.R. 1004, 1005 (Bankr.W.D.Mo.1988); Rivoli Grain Company v. Litton (In re Litton), 74 B.R. 557, 560 (Bankr.C.D.Ill.1987).
For a long period of time it was held that the waiver must be knowledgeable and intelligent. See, Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); United States v. St. Pierre, 132 F.2d 837, 840 (2d Cir.1942); Klein v. Harris, 667 F.2d at 287 ("the witness has reason to know that his statements would be interpreted as a waiver of the fifth amendment's privilege against self-incrimination").
However, the Supreme Court appears to have abandoned even that requirement in Garner v. United States, 424 U.S. 648, 653, 96 S.Ct. 1178, 1182 n. 9, 47 L.Ed.2d 370 (1976):
[W]e recently have made clear that an individual may lose the benefit of the privilege without making a knowing and intelligent waiver.
See also, Annotation, 47 L.Ed.2d 922, § 2; Stacey v. Solem, 801 F.2d 1048, 1050 (8th Cir.1986).
It has also been held that a waiver may be implied only with regard to the proceedings in which the voluntary actions took place, but may not be inferred with respect to a subsequent, different proceeding. See, United States v. Housand, 550 F.2d 818, 821, n. 3 (2d Cir.1977); Annotation, 72 A.L.R.2d 830, § 5.
As Learned Hand indicated, however:
In Arndstein v. McCarthy, 254 U.S. 71, 41 S.Ct. 26, 65 L.Ed. 138 and McCarthy v. Arndstein, 262 U.S. 355, 43 S.Ct. 562, 67 L.Ed. 1023, the question was presented whether a bankrupt's schedules waived his privilege when he was examined . . . it was held that they did not, and that he might refuse to answer as to *55 the disposition of his property. The court apparently treated the schedules and the examination as a single proceeding, else the question of waiver could not have arisen.

United States v. St. Pierre, 132 F.2d at 839 (emphasis added). See also, In re Mudd, 95 B.R. 426, 430-1 (Bankr.N.D.Tex.1989). But cf., In re Hulon, 92 B.R. 670, 674 (Bankr.N.D.Tex.1988).
The approved disclosure statement in this case states: "The information contained in the Disclosure Statement was derived from:"
(a) the Debtor and the Debtor's books and records and files;

(b) the related Debtors, Leibel Lederman, Linda Rezak, and Howard Weiss . . . and their books and records and files; and
(c) the books and records and files of related entities in which the Debtor and/or the Related Debtors have an interest.
Fourth Amend.Disc.Stat. at 2.
This is an unqualified statement that Rezak was willing to disclose all the materials in his possession in order to compile a disclosure statement to be provided to his creditors. Nothing in the disclosure statement indicates that only a portion of the records was used or that materials that may incriminate him were not used.
The disclosure statement indicates that a Creditors' Steering Committee had been appointed and accountants had been retained as part of the attempted pre-filing common law composition.
The Steering Committee then retained the accounting firm of Deloitte & Touche ("Touche") which conducted an analysis of the assets of the Debtors, and examined the books and records of the Debtors and of their related corporate, limited partnership and general partnership entities . . . Pursuant to agreement with the Steering Committee, the Debtors paid in excess of $100,000.00 to Touche in an effort to provide creditors with an opportunity to do their own analysis and make a more informed decisions vis-a-vis the Debtors.

Fourth Amend.Disc.Stat. at 4 (emphasis added).
Thereafter, on or about January 16, 1990, working from and based upon information they were able to gather from the Debtors, Touche issued an analysis of estimated recovery by creditors from the Debtors' assets . . . annexed hereto as Exhibit B.
Fourth Amend.Disc.Stat. at 5 (emphasis added).
In describing the proceedings that took place during the chapter 11 proceeding the disclosure statement provides:
[T]he creditors insisted that before any proposal would be considered, the Debtors would have to provide creditors with a detailed in depth analysis of the cumulative assets of the Debtors . . . the Creditors Committee wanted an opportunity to do a detailed investigation into the myriad transactions of the Debtors, and the Related Entities . . . the Debtors, primarily through Lederman's counsel, undertook the arduous task of preparing a thirty-page detailed analysis of each of the assets of the Debtors.

Fourth Amend.Disc.Stat. at 7-8 (emphasis added).
These representations made in the approved disclosure statement, signed by both Rezak and his attorneys, presumably after the reasonable inquiry required by Fed.R.Bankr.P. 9011(a), are, in effect, admissions that Rezak's books, records and files had been disclosed in their entirety and produced for examination by the Steering Committee members and their accountants, the Creditors' Committee, and to separate counsel to related debtors. By so doing, Rezak clearly waived his right to assert the privilege against self-incrimination regarding the documents production now requested by the RTC.
We hold therefore that Rezak has either waived his privilege against self-incrimination or lost it. Garner, 424 U.S. at 653 n. 9, 96 S.Ct. at 1182 n. 9.
(iii) The documents, production of which is requested by the RTC, are business records of Rezak as a sole proprietor, *56 as well as of other corporations and partnerships in which he had an interest. The content of a business record voluntarily prepared is not protected by the Fifth Amendment privilege. See, United States v. Doe, 465 U.S. 605, 610, 104 S.Ct. 1237, 1241, 79 L.Ed.2d 552 (1984). As the Fairbanks court noted: "The line of cases culminating in Fisher [v. United States, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39][(1976)] have stripped the content of business records of any Fifth Amendment protection; such protection is afforded only to the testimonial content of the act of turning over the records under compulsion." In re Fairbanks, 135 B.R. at 729. See, Doe, 465 U.S. at 612, 104 S.Ct. at 1241; In re Grand Jury Subpoenas Duces Tecum, 722 F.2d 981, 986 (2d Cir.1983); Butcher v. Bailey, 753 F.2d 465, 469 (6th Cir.1985).
In the circumstances of this case we believe the act of production will carry no significant testimonial effect.
Compliance with the subpoena may admit certain facts, such as the existence of the requested documents, which in most cases will be so trivial that the Constitution is not implicated.
Fairbanks, 135 B.R. at 729.
Based on the previous disclosure of all of Rezak's books, records and files (see point (ii) infra), we believe that "[t]he existence and location of the documents were forgone conclusions. By conceding that he has the papers, the taxpayer would add little or nothing to the government's information." In re Connelly, 59 B.R. at 438.
Furthermore, based on the nature of the documents requested by the RTC, it is obvious that most of them were prepared by third parties and may not fall under any privilege, including the Fifth Amendment:
Finally, the taxpayer did not prepare the papers, could not vouch for their accuracy, and authenticating testimony would be required to admit them into evidence against him. Fisher v. United States, 425 U.S. at 413, 96 S.Ct. at 1582. The possibility that responding to the subpoena would authenticate the workpapers did not, therefore, appear to represent a substantial threat of self-incrimination. Fisher v. United States, 425 U.S. at 412 n. 12, 96 S.Ct. at 1582 n. 12.
In re Connelly, 59 B.R. at 438.

CONCLUSION
Based on the foregoing, we deny Rezak's objection to RTC's first production request and grant RTC's motion seeking an order compelling discovery. Rezak is directed to produce to Charter Federal or the RTC the requested documents not previously produced.
NOTES
[1] 11 U.S.C. § 523(a) provides in its relevant part:

"A discharge . . . does not discharge an individual debtor from any debt 
(2) for money, property, services or an extension, renewal or refinancing of credit, to the extent obtained by 
(b) use of statement in writing 
(i) that is materially false;
(ii) respecting the debtor's or an insider's financial condition;
(iii) on which the creditor . . . relied; and
(iv) that the debtor caused to be made or published with intent to deceive;
* * * * * *
(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;"
[2] Discharge of a chapter 11 debtor is regulated by 11 U.S.C. § 1141.
[3] 11 U.S.C. § 344 provides for the bankruptcy court's general power to grant immunity. It is not, however, equivalent to § 727(a)(6)(B). See also n. 4 infra.
[4] The existence of this Hobson choice with respect to debtor's refusal to produce books and records while defending objections to discharge or dischargeability of debts is not inconsistent with the departure of current law from the old bankruptcy act. Compare, In re Connelly, 59 B.R. at 428, n. 10, 11; 11 U.S.C. § 521(4).