In re Charles D. WELDON, Debtor.

RitaSue SIEGEL, Plaintiff,

v.

Charles D. WELDON, Defendant.

Bankruptcy No. 94–71548.
Adv. No. 94–8182.

United States Bankruptcy Court,
D. South Carolina.

June 5, 1995.

Robert F. Anderson, Columbia, SC, for RitaSue Siegel.

H. Eugene Trotter, Columbia, SC, for Charles D. Weldon.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER came before the Court for trial on May 8, 1995 upon the Complaint of Plaintiff pursuant to 11 U.S.C. Section 727.[1] Plaintiff is a creditor of the estate of the Debtor and has brought the within adversary proceeding to deny the discharge of the Debtor on the grounds that he has: (1) transferred, removed, or concealed property with the intent to defraud creditors, § 727(a)(2); (2) concealed, falsified, or failed to keep or preserve recorded information, including books and records, from which the Debtor's financial condition or business transactions might be ascertained, § 727(a)(3); (3) knowingly and fraudulently withheld information from the Trustee in connection with this case, including books and records relating to the Debtor's property and financial affairs, § 727(a)(4); and (4) failed to adequately or satisfactorily explain loss of assets, or the deficiency of assets to meet the Debtor's liabilities, § 727(a)(5).[2]

Based upon the testimony and evidence presented at trial, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT & CONCLUSIONS OF LAW

■ The Bankruptcy Code favors discharge of an honest debtor's debts and the provisions denying a discharge to a debtor are generally construed liberally in favor of the debtor and strictly against the creditor. However, the Code sets limits on the rights of debtors to discharge. "While the law favors discharges in bankruptcy, it will not ordinarily tolerate the [debtor's] intentional departure from honest business practices where there is a reasonable likelihood of prejudice." 4 Collier on Bankruptcy § 727.01A (15th ed.). Bankruptcy discharge is not a matter of right, but rather a statutory privilege afforded an honest debtor who meets certain requirements. *Hazelip v. Horridge (In re Horridge)*, 127 B.R. 798, 799 (S.D.Tex.1991). *See also State Bank of India v. Chachra (In re Chachra)*, 138 B.R. 397 (Bankr.S.D.N.Y.1992). "The Bankruptcy Code provides for discharge of a debtor's debts, allowing him or her to obtain a 'fresh start' while at the same time providing for

---

1. All further references to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, shall be by section number only.

2. While the elements of § 727(a)(5) were plead in the Complaint, the Plaintiff failed to produce evidence or testimony at the trial related to § 727(a)(5) and therefore the Court will enter judgment in favor of the Defendant on this cause of action.

disclosure and examination so as to insure maximum recovery for creditors. Distribution and discharge are at the heart of the bankruptcy process." *Resolution Trust Corp. v. Rezak (In re Lederman),* 140 B.R. 49, 52 (Bankr.E.D.N.Y.1992) (citing *Community National Bank v. Persky (In re Persky),* 134 B.R. 81, 96 (Bankr.E.D.N.Y.1991)). "[B]oth section 727 and section 523 should be viewed as standing at the heart of the bankruptcy process; together they define the extent of the debtor's discharge and the scope of the fresh start afforded to it." *Rezak,* 140 B.R. at 53.

■■■■ The burden of proof in an objection to discharge is on the plaintiff. Rule 4005, Federal Rules of Bankruptcy Procedure "Once this burden has been satisfied, the debtor carries the burden of proof as to whether the failure to keep records was justified." *City Nat'l Bank of Miami v. Savel (In re Savel),* 29 B.R. 854, 856 (Bankr. S.D.Fla.1983). These burdens must be established by a preponderance of the evidence. *Peoples Bank of Charles Town v. Colburn (In re Colburn),* 145 B.R. 851, 861 (Bankr.E.D.Va.1992); *Green Hill Corporation v. Kim (In re Kim)* 97 B.R. 275, 280 (Bankr.E.D.Va.1989). Plaintiff has met this burden on multiple grounds and the Debtor has failed to provide any adequate justification to overcome the denial of discharge.

### I. Fraudulent Concealment— Section 727(a)(2)

■■■■ Section 727(a)(2) allows the denial of a debtor's discharge where

(2) the Debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

    (A) property of the Debtor, within one year before the date of the filing of the petition; or

    (B) property of the estate, after the date of the filing of the petition. . . .

This section requires a showing of intent, "but fraudulent intent may be established by circumstantial evidence, or by inferences drawn from a course of conduct." *In re Devers,* 759 F.2d 751, 753–54 (9th Cir.1985); *Morton v. Dreyer (In re Dreyer),* 127 B.R. 587 (Bankr.N.D.Tex.1991). Extrinsic evidence of fraud, for purposes of defeating discharge, can be comprised of conduct intentionally designed to materially mislead or deceive creditors about a debtor's position; conveyances for less than fair value; or continued retention, benefit, or use of property allegedly conveyed together with evidence that conveyance was for inadequate consideration. *In re Johnson,* 880 F.2d 78, 82 (8th Cir.1989). "Where the assets of substantial value are omitted from the schedules, the conclusion that they were omitted purposefully with the fraudulent intent to conceal the assets in question may be warranted." *In re Topping,* 84 B.R. 840, 842 (Bankr.M.D.Fla. 1988). Even absent fraud, the requisite intent to hinder creditors may be found from the debtor's failure to disclose pertinent information. *In re Stowe,* No. 93–41274–T (Bkrtcy.E.D.Va.) (J. Tice).

The weight of evidence shows, and the Court finds, that the Debtor has failed to disclose material assets and transfers both on his Schedules and Statement of Affairs and at his First Meeting of Creditors. Specifically, the Debtor has (a) failed to disclose certain pieces of artwork which are being held for sale on his behalf by at least one gallery in New York City; (b) failed to disclose the sale of approximately $34,000.00 of art in the two years preceding his bankruptcy and at least $26,000.00 in the year preceding his bankruptcy;[3] (c) failed to disclose the transfer of certain pieces of art, with a value of at least $3,000.00, to his mother and sister on the eve of his bankruptcy; and (d) failed to disclose the post-petition receipt of $2,500.00 for artwork sold pre-petition by a New York gallery.

The Court further finds that the Debtor's Schedules and Statement of Affairs were in-

---

**3.** Although the Debtor testified that these transfers were for a considerable loss this does not excuse his failure to disclose. Disclosure is necessary to aid the Trustee in seeking out potential § 548 actions.

sufficient to enable the Trustee to trace the assets of the estate and misrepresented his financial activity during the period prior to the bankruptcy by failing to disclose significant transactions involving the sale of artwork. While the Debtor did present both amended Schedules and an Affidavit disclosing some transactions, these revelations were made only after steps were taken by the Plaintiff to force such disclosure. Over the course of this action, disclosure became more detailed as the Plaintiff continued to confront the Debtor with additional documents. Furthermore, the Debtor's attempt to amend his Schedules was incomplete and wholly ineffective as they still failed to disclose all of the transactions which occurred in the period prior to the bankruptcy and failed to provide any pertinent information regarding who purchased the artwork and where. Finally, while the Debtor received a check shortly after filing for bankruptcy for the prepetition sale of artwork, the Trustee was not made aware of this until substantially later in the case. After the Plaintiff presented the cancelled check to the Debtor; the Debtor failed to turn over these funds to the estate. Together, these facts indicate an intent to conceal information from creditors.

■ Furthermore, the Debtor's failure to maintain records may be used as circumstantial evidence in determining fraudulent intent. The court in *In re Devers* found that a debtor's "self-serving statement of intent" in explaining his "negligent failure" to keep records was not evidence of lack of fraudulent intent. That court held that "the numbers and magnitude of sales eliminate any possible finding of mere negligence that could vitiate the inference of intent." *In re Devers*, 759 F.2d at 754. The Debtor revealed during cross-examination, rather than in his Schedules and Statement of Affairs that he in fact had destroyed numerous records related to these transactions, rather than having negligently failed to keep them, thus, bolstering the inference of fraudulent intent.

Based on the foregoing, the Court finds that the Debtor possessed the requisite intent to conceal property from his creditors.

## II. DESTRUCTION OF AND FAILURE TO KEEP RECORDS—§ 727(a)(3)

■ The Plaintiff also seeks to deny the Debtor's discharge under Section 727(a)(3), which states that the Debtor shall not be granted a discharge if:

(3) the Debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the Debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case. . . .

■ "The purpose of section 727(a)(3) is to insure [sic] that the Trustee and creditors are supplied with dependable information on which they can rely in tracing a debtor's financial history." *Matter of Esposito*, 44 B.R. 817, 826 (Bankr.S.D.N.Y.1984). The *Matter of Esposito* Court found the appropriate inquiry in a Section 727(a)(3) complaint is "whether there [is] available written evidence made and preserved from which the present financial condition of the [debtor], and his business transactions for a reasonable period in the past may be ascertained." 44 B.R. at 826–27 (citing *Matter of Decker*, 595 F.2d at 187 (quoting *In re Underhill*, 82 F.2d 258, 260 (2d Cir.), *cert. denied*, 299 U.S. 546, 57 S.Ct. 9, 81 L.Ed. 402 (1936))). "Records are adequate when they are kept so as to reflect, with a fair degree of accuracy, the debtor's financial condition and in a manner appropriate to his business." *Green Hill Corporation v. Kim (In re Kim)*, 97 B.R. 275, 279 (Bankr.E.D.Va.1989) (citing *In re Tackett*, 67 B.R. 354, 359 (Bankr.E.D.Tenn.1986)); *Matter of Wilson*, 33 B.R. 689, 691 (Bankr. M.D.Ga.1983). The Code requires a debtor to keep sufficient records so that there are "accurate signposts on the trail showing what property passed through the debtor's hands during the period prior to his bankruptcy." *Morton v. Dreyer (In re Dreyer)*, 127 B.R. 587, 594 (Bankr.N.D.Tex.1991). The Code, therefore, in no way imposes burdensome demands on the debtor; the only requirement is that the "trail" of the debtor's assets must be discernable. In *Matter of Esposito*, the trustee presented an affidavit of the ac-

countant retained by the trustee. The affidavit simply stated: "neither the Trustee nor myself was able to locate any of [the debtor's] books and records." *Esposito*, 44 B.R. at 827. That court ruled in favor of the trustee, and went on to state that while intent to conceal records was obvious, intent "is not a requisite element to be specifically proved for a denial of discharge under § 727(a)(3)." *Id.* The testimony in this case is clear that, in the years prior to bankruptcy, the Debtor maintained and owned a large volume of artwork, with a value of up to $300,000.00, and either failed to maintain or has refused to produce any records related to the purchase, sale or other disposition of that art [4]. Furthermore, the Debtor first testified that the records were not kept and then, on cross-examination, that he had destroyed them. Thus, the Debtor has failed to meet the Bankruptcy Code's minimal requirement for keeping or maintaining records in several significant particulars, including failure to document the purchase and sale of artwork, failure to keep invoices from the sale of artwork, and failure to maintain adequate bank records sufficient to enable the trustee to trace assets.

### III.  FAILURE TO DISCLOSE— § 727(a)(4)

Section 727(a)(4) permits a denial of discharge where

(4) the Debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account

(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the Debtor's property or financial affairs

. . . .

The falsity of the oath is a question of fact and must be related to a material fact. *Williamson v. Fireman's Fund Insurance Company*, 828 F.2d 249, 251 (4th Cir.1987). The

Debtor has admitted that he incorrectly answered many of the questions on the Schedules and Statement of Affairs and at the First Meeting of Creditors. Furthermore, the Trustee testified that, despite requests, the Debtor did not produce any books or records of his business transactions.

The Debtor argues that there should be a "no-harm, no-foul" exception here, because the dollar amounts involved are not significant enough to justify denying discharge. The Court disagrees. The critical time for disclosure is at the time of the filing of a petition and the Debtor has the responsibility to do so. Bankruptcy law requires debtors to be honest and to take seriously the obligation to disclose all matters. The bankruptcy schedules and statements of affairs are carefully designed to elicit certain information necessary to the proper administration and adjudication of the case. To allow the Debtor to use his discretion in determining the relevant information to disclose would create an end-run around this strictly crafted system.

While the Debtor has argued that his mental condition was a factor in his failure to comply, the Court does not find that to be a sufficient excuse. First, while testifying, this Court notes that the Debtor appears to be competent. Additionally, while the Court does not doubt that the Debtor used the money from the sale of the artwork to live on and he has testified to some difficult circumstances in his life, this fact does not justify his failure to disclose this information. Debtor's position that these omissions were merely technical oversights early in the bankruptcy and do rise to the level of denying discharge is without merit. It appears to this Court that the failure of the Debtor to disclose material facts to be sufficient grounds to deny discharge, especially because the Debtor has had more than ample

---

4. During cross-examination of the Debtor, his testimony indicated that he may have, at one time, had such records; but his testimony was less than clear, nor convincing, concerning his records, or lack thereof. Despite the Debtor's attempt at persuasion to the contrary, I believe that the Debtor had a background and experi-

ence in buying and selling artwork prior to his marriage to the Plaintiff. Furthermore, the Debtor had experience with record keeping in connection with that artwork and at one time maintained a large volume of records related to his art dealing. The Debtor has not turned over any records to the Trustee.

time and opportunity to present a meaningful, full and complete disclosure.

## CONCLUSION

For all of the reasons set forth above, it is

**ORDERED,** that pursuant to 11 U.S.C. § 727(a)(2) the Debtors discharge shall be denied. It is further

**ORDERED,** that pursuant to 11 U.S.C. § 727(a)(3) the Debtors discharge shall be denied. It is further,

**ORDERED,** that pursuant to 11 U.S.C. § 727(a)(4) the Debtors discharge shall be denied. It is further

**ORDERED,** that on the Plaintiff's cause of action pursuant to 11 U.S.C. § 727(a)(5), judgment shall be entered in favor of the Defendant.

**AND IT IS SO ORDERED.**