**In re Ginio A. VOLPE, Debtor.**

**Transworld, Inc., Plaintiff,**

v.

**Ginio A. Volpe, Defendant.**

**In re Richard James McDonough, Debtor.**

**Transworld, Inc., Plaintiff,**

v.

**Richard James McDonough, Defendant.**

**Bankruptcy Nos. C/A 02–11085–W, C/A 02–10790–W. Adversary Nos. 02–80372–W, 02–80373–W.**

United States Bankruptcy Court, D. South Carolina.

Sept. 5, 2003.

Reid B. Smith, Lead Attorney, Columbia, SC, for Debtors.

H. Flynn Griffin, III, Lead Attorney, Columbia, SC, for Plaintiff.

## JUDGMENT

JOHN E. WAITES, Bankruptcy Judge.

Based upon the Findings of Fact and Conclusions of Law in the attached Order

of the Court, Debtors' discharges are denied pursuant to § 727(a)(3).[1]

## ORDER

THIS MATTER comes before the Court for trial upon Transworld, Inc.'s ("Transworld" or "Plaintiff") complaints (the "Complaints") objecting to the discharges of Ginio Volpe ("Volpe") and Richard James McDonough ("McDonough") (collectively, the "Debtors"). After considering the pleadings in this matter, the parties' arguments, and the evidence presented at trial, the Court makes the following findings of fact and conclusions of law.[1]

## FINDINGS OF FACT

Volpe filed a Voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code on September 18, 2002. Plaintiff filed the Complaint on December 16, 2002, requesting that Volpe's discharge be denied pursuant to § 727(a)(3) for failure to keep adequate records and that Plaintiff's debt be excepted from discharge pursuant to § 523(a)(4) for defalcation while acting in a fiduciary capacity and § 523(a)(6) for willful and malicious injury to property.

McDonough filed a Voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code on September 11, 2002. Plaintiff filed the Complaint on December 16, 2002, asking that McDonough's discharge be denied pursuant to § 727(a)(3) for failure to keep adequate records, § 727(a)(2) for fraudulent transfers, and that Plaintiff's debt be excepted from discharge pursuant to § 523(a)(4) for defalca-

tion while acting in a fiduciary capacity and § 523(a)(6) for willful and malicious injury to property.

Following the presentation of evidence by Plaintiff at trial, the Court granted judgment on partial findings to Debtors pursuant to Rule 52(c) of the Federal Rules of Civil Procedure, incorporated by Rule 7052 of the Federal Rules of Bankruptcy Procedure, on Plaintiff's § 727(a)(2) claim against McDonough and Plaintiff's § 523(a)(6) claim against both Debtors. Plaintiff's claims under §§ 727(a)(3) and 523(a)(4) remain. The two proceedings were consolidated for trial by agreement of the parties.

The parties entered into several stipulations in anticipation of trial. The parties agreed that Volpe had not prepared or filed state or federal tax returns for the calendar years 2000, 2001, or 2002. McDonough entered into an identical stipulation, except he had failed to prepare or file state or federal tax returns for the calendar year 1999 in addition to the other years.[2]

Both McDonough and Volpe were members of Green Park Builders, LLC ("Green Park"). Green Park was a general contractor for several real estate projects in the Myrtle Beach, South Carolina area. Green Park ordered goods and services from Transworld. The goods and services were used to improve the real estate projects. The parties stipulated that Volpe and McDonough, as members of Green

---

**1.** Although these proceedings were consolidated for trial, this Judgment, and an Order to be entered contemporaneously herewith, shall be signed in duplicate and entered in original form on the docket for each Debtor.

**1.** The Court notes that to the extent any of the following Findings of Fact constitute Conclusions of Law, these are adopted as such, and

to the extent any of the following Conclusions of Law constitute Findings of Fact, they are so adopted.

**2.** When the instant Complaints were filed the 2002 tax returns were not due. They became due on April 15, 2003.

Park, had a fiduciary duty to the creditors of the company.[3]

Transworld provided goods and services to Green Park through 1999. Green Park fell behind on its obligations and on March 1, 2000, Green Park, McDonough, and Volpe executed a Promissory Note in Transworld's favor.[4] Green Park ceased doing business sometime in mid–2000. Debtors subsequently defaulted under the terms of the Note and Transworld filed an action in the South Carolina Court of Common Pleas to recover on the Note. Summary Judgment was granted in favor of Transworld on June 28, 2001.

McDonough's Schedules filed with the Court indicate that he owns interests in the following businesses: Green Park Homes, LLC (33.3%); Green Park Builders, LLC (50%); Monarch Group, LLC (100%); and IADOM (50%). McDonough's Statement of Financial Affairs indicated during the calendar year 2001, he had gross income of $30,000; and during 2000, gross income of $50,000. His Statement of Financial Affairs also indicates that he was an officer or director of the companies listed that he owned and, in addition, that he was an officer or director of companies called Courtyard at Sweetwater, Sun Colony Development, and Sweetwater at Indian, during the six (6) years prior to the filing of the Petition.

Volpe's Schedules filed with the Court indicate that he owns interests in the following businesses: LB Partners, LLC (66%); Green Park Builders, LLC (50%); Green Park Homes, LLC; IADOM (50%); Sun Colony Development, LLC; and Tribune Holdings. Volpe's Statement of Financial Affairs indicates during the calendar year 2001 he had gross income of $30,000.00; and during 2000 gross income of $50,000.00. The Statement of Financial Affairs further indicates that in addition to the companies he owned, he was an officer or director of Courtyard at Sweetwater, Monarch Group, LLC, and Sweetwater at Indian during the six (6) years prior to the filing of the Petition.

Prior to the filing of Debtors' Chapter 7 cases, Transworld scheduled a Supplemental Proceeding hearing of Debtors in their representative capacity as the owners and officers of Green Park Builders, LLC. The Court of Common Pleas for Horry County ordered that Debtors appear on May 29, 2002. The Supplemental Proceeding was postponed to November 26, 2002. Debtors were ordered to provide the following documents:

1. Copies of bank statements and cancelled checks for the past 36 months for each bank account in which Defendant has an ownership interest, both individually and as a company;

2. Copies of all federal and state income tax returns for the years 1997, 1998, 1999, 2000, and 2001.

3. List of all stockholders, owners and officers of Green Park Builders, LLC;

4. List all companies in which the Defendant has an ownership interest, including any corporation, LLC or partnership;

5. A copy of any financial statements the Defendant has submitted to any financial institution in the last 36 months;

---

3. The stipulation regarding Debtors' fiduciary duty is primarily relevant to Plaintiff's § 523(a)(4) claim. The Court need not address the merits of the § 523(a)(4) claim for reasons stated hereinafter.

4. The parties testified that a second promissory note was executed in June 2000.

6. A list of all real property in which Defendant has an ownership interest;

7. A list of all real property sold by the Defendant in the last 36 months;

8. Copy of all files of real property sold by the Defendant in the last 36 months;

9. A list of all motor vehicles in which Defendant has an ownership interest;

10. A list of all motor vehicles sold by Defendant in the last 36 months;

11. For each parcel or real property and for each motor vehicle in which Defendant has an ownership interest, a statement from any lien holders showing the approximate balance of any lien(s);

12. A list of all stocks and/or bonds in which Defendant has an ownership interest;

13. A list of any other assets not specified above in which Defendant has an ownership interest;

14. Copy of all closing statements of all real estate sold;

Debtors produced no documents whatsoever at the Supplemental Proceeding hearing.

On November 20, 2002, pursuant to Order of this Court, Transworld examined both Debtors pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure. Debtors were commanded by subpoena to produce their state and federal tax returns for 2000 and 2001. At the examination, Debtors admitted they had not prepared or filed tax returns for calendar year 2000

(Volpe) and 1999 (McDonough) and subsequent years.

Shortly before trial in the matter before the Court, Debtors produced unfiled copies of their 1999—2002 individual tax returns.[5] McDonough also produced certain copies of checks and six (6) bank statements from personal accounts for intermittent periods of approximately one (1) month each. Volpe provided no bank account records. No business records of Green Park or any business entity in which Debtors had an interest were offered at trial.[6]

On December 16, 2002, Plaintiff filed the instant Complaints. Debtors answered and the matters were set for trial Monday, June 30, 2003. On Friday, June 27, Debtors submitted their 1999, 2000, 2001, and 2002 tax returns to Plaintiff's attorney. All of the returns are dated June 26, 2003. There is no evidence that the tax returns for either Debtor were filed with the Internal Revenue Service.[7]

## CONCLUSIONS OF LAW

Plaintiff has asked that Debtors' discharges be denied pursuant to §§ 727(a)(3) and 523(a)(4). The plaintiff has the burden of proving an objection to discharge under § 727 or an objection to dischargeability under § 523 by a preponderance of the evidence. *See e.g., Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Farouki v. Emirates Bank Int'l, Ltd.,* 14 F.3d 244 (4th Cir. 1994); *In re Beaubouef,* 966 F.2d 174 (5th Cir.1992); *First Nat'l Bank of Gordon v. Serafini,* 938 F.2d 1156, 1157 (10th Cir. 1991); *Fort Jackson Fed. Credit Union v. Wicker (In re Wicker),* C/A No. 99–07108–

---

**5.** Volpe's 1999 tax return had been previously filed.

**6.** References were made to certain CD–Roms provided to Plaintiff's state court counsel that allegedly contained some financial informa-

tion of Debtors' business entities. The CD–Roms were not admitted into evidence.

**7.** The tax returns were admitted into evidence over the objections of the Plaintiff.

W; Adv. Pro. No. 99–80392–W, slip op., 2000 WL 33709668 (Bankr.D.S.C.5/24/2000) ("A party challenging the dischargeability of a debt has the ultimate burden of establishing, by a preponderance of the evidence, that the debt falls within one of the exceptions of § 523 or § 727.") Once the plaintiff makes a *prima facie* case, the burden of proof shifts to the debtor to offer credible evidence to satisfactorily explain his or her conduct. *Farouki*, 14 F.3d at 249–50.

The Court will first address Plaintiff's § 727(a)(3) claim. Section 727(a)(3) provides as follows:

> (a) The court shall grant the debtor a discharge, unless
>
> > (3) The debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

▋ "The purpose of section 727(a)(3) is to insure that the trustee and creditors are supplied with dependable information on which they can rely in tracing a debtor's financial history. The trustee and creditors are entitled to complete and accurate information showing what property has passed through the debtor's hands prior to his bankruptcy." *Siegel v. Weldon (In re Weldon)*, 184 B.R. 710, 714 (Bankr. D.S.C.1995) (citing *In re Esposito*, 44 B.R. 817, 826 (Bankr.S.D.N.Y.1984)). In order to obtain a discharge, a debtor must "keep and preserve" records. Keep and preserve are not synonyms. " 'Keep' has the same meaning it would have in phrases such as 'to keep a diary' or to 'keep a record', that is, to maintain a record by entering it in a book. Otherwise the repe-

tition of the word 'preserve' is superfluous, a disfavored result." *In re Scott*, 172 F.3d 959, 969 (7th Cir.1999). Keep also means to maintain continuously and methodically. *Lubman v. Hall (In re Hall)*, 174 B.R. 210, 214 (Bankr.E.D.Va.1994). Written information is required such that there are " 'accurate signposts on the trail showing what property passed through the debtor's hands during the period prior to his bankruptcy.' " *Weldon*, 184 B.R. at 714 (quoting *Morton v. Dreyer (In re Dreyer)*, 127 B.R. 587, 594 (Bankr.N.D.Tex.1991)).

▋ Neither the objecting party nor the Court is required to reconstruct the financial trail; the evidence must be sufficient to account for debtor's financial condition and business transactions without requiring the creditor to reconstruct the history through a maze of transactions and business entities. *In re Juzwiak*, 89 F.3d 424, 428–29 (7th Cir.1996). *See also Aid Auto Stores, Inc. v. Pimpinella (In re Pimpinella)*, 133 B.R. 694, 698 (Bankr. E.D.N.Y.1991) (court should not have to speculate as to loss of assets nor should creditors or trustee be required to reconstruct debtor's affairs). "The Code, therefore, in no way imposes burdensome demands on the debtor; the only requirement is the that the 'trail' of the debtor's assets must be discernable." *Weldon*, 184 B.R. at 714.

▋ Additionally, debtor's records must be kept in a manner which is contemporaneous to the events as they unfold. *See In re Strbac*, 235 B.R. 880, 885 (6th Cir. BAP 1999) ("Creditors are entitled to see it for themselves from contemporaneous, accurate, reliable records that the debtor is required to maintain and produce.").

▋ The question before the Court is whether the limited records provided by Debtors are sufficient to ascertain Debtors' financial condition or business transac-

tions within the meaning of § 727(a)(3). The Court finds that they are not.

The crux of Plaintiff's argument is that it is unable to trace any flow of funds from and to the various entities in which Debtors had a partnership interest, including Green Park, and untangle their affairs, without personal and business financial records and filed tax returns. Debtors maintain that they are only required to keep their individual records, not corporate records. Creditors are entitled to "determine or confirm the debtor's financial condition and the cause of the debtor's financial difficulty." 6 Alan N. Resnick et al., *Collier on Bankruptcy,* ¶ 727.03[3][a] (15th ed. rev.2001). Individual debtors are often required to produce business records in order to determine the individual debtor's financial condition. *See, e g., In re Nipper,* 186 B.R. 284 (Bankr.M.D.Fla. 1995); *In re Turpin,* 142 B.R. 491 (Bankr. M.D.Fla.1992); *In re Levine,* 107 B.R. 781 (Bankr.S.D.Fla.1989); *In re Goblick,* 93 B.R. 771 (Bankr.M.D.Fla.1988).

Where individuals are intimately related to closely held businesses, the individual's financial condition may not be fully ascertainable without reference to the business records. *See Union Planters Bank, N.A. v. Connors,* 283 F.3d 896 (7th Cir.2002). As noted by the Seventh Circuit, shifting of funds among debtors' various business entities heightened the need for debtors to keep and preserve sufficient records to "reconstruct the business transactions between the [debtors] and their various enterprises." *Id.,* 283 F.3d at 900. The level of sophistication of the debtors and the entities in which the debtors have an interest are factors to be considered. *See also Peoples Bank. v. Colburn (In re Colburn),* 145 B.R. 851, 861 (Bankr. E.D.Va.1992) (factors include business ex-

perience and sophistication of debtor as well as complexity of debtor's business); *Malloy v. Goldstein (In re Goldstein),* 123 B.R. 514, 523 (Bankr.E.D.Pa.1991) (complex business structure required heightened degree of record keeping).

In the matter before the Court, Debtors had interests in a number of partnerships, at least one of which is a Canadian entity. Their business structure was a complicated maze of entities, many of which were owned by Sun Colony Development, LLC, a partnership in which Volpe had an ownership interest and in which McDonough was an officer or director. Testimony and evidence revealed inconsistencies with respect to which entities Debtors had an interest at various times. Accordingly, for the reasons cited above, the lack of records concerning Debtor's business entities and transactions is relevant to Plaintiff's § 727(a)(3) claim.

While Debtors provided no business records to ascertain their financial condition or business transactions, their submission of personal records was limited and, with respect to their tax returns, partially if not wholly inaccurate. Volpe did not provide any personal financial account information. Volpe testified that since 2000 he has stayed home while his wife worked outside the home. Volpe further testified that his wife has a checking account in her name only and that he has no income.

McDonough submitted checking account statements for June 7, 2002 through October 7, 2002 for an account at Wachovia bank in the name of Jayne B. and Jim McDonough (Defendant's Exhibit 7).[8] McDonough also submitted intermittent checking account statements for a period from October 1998 through March 2000 for a closed account from Coastal Federal in the name of Richard J. McDonough.

8. There appears to be no dispute that "Jim McDonough" refers to Debtor.

These statements are dated November 6, 1998 (includes October and early November), February 2, 1999 (includes January and early February), August 6, 1999 (includes July and early August), December 3, 1999 (includes November and early December), February 4, 2000 (includes January and early February), and March 3, 2000 (includes February and early March).

The unfiled tax returns submitted on the eve of trial were not filed and were all dated June 26, 2003.[9] The tax returns submitted by Debtors generate more questions than answers. Volpe's 1999 and 2000 tax returns indicate he is a partner in a company called Marshview, LLC. Marshview is not indicated in Volpe's Statement of Financial Affairs. All four (4) of Volpe's tax returns indicate he is a partner in Deerfield Development Group, LLC. Deerfield is not listed as an asset in Volpe's Schedules, nor in the Statement of Financial Affairs. Volpe's tax returns omit several partnerships which he claims he owns in his bankruptcy Schedules, specifically LB Partners, LLC; Green Park Homes, LLC; IADOM; and Tribune Holdings. The 2000 tax returns indicate that Volpe had an adjusted gross income of $107,806.00 in the calendar year 2000, as opposed to $50,000.00 indicated in his Statement of Financial Affairs. The 2001 tax returns indicate an adjusted gross income of (-$1,455.00), as opposed to $30,000.00 indicated in his Statement of Financial Affairs. Finally, the 2002 tax returns indicate that Volpe sold a condominium on January 31, 2002 for a gross sales price of $57,651.00. As indicated above, the Statement of Financial Affairs indicates that there were no property transfers within the year prior to the filing of the Petition.

McDonough's tax returns also indicate that he was a partner in Marshview, LLC during 1999 and 2000. Marshview is not listed in his Statement of Financial Affairs. All of McDonough's tax returns indicate that he is a partner in Deerfield Development Group, LLC. Deerfield is not listed as one of McDonough's assets in his Schedules, or as a partnership within the last six (6) years in his Statement of Financial Affairs. The tax returns indicate that on December 31, 2001, McDonough sold Unit 201, Building 7 for $60,000.00. This sale is not indicated on his Statement of Financial Affairs. A sale on February 6, 2001 to Livio Volpe of Lot 225, Deerfield Subdivision for $130,000.00 which is listed in the Statement of Financial Affairs, is not indicated in the 2001 tax returns. McDonough's 2002 tax returns indicate on December 31, 2002, he sold Unit 201, Building 1, which had been acquired by him on January 1, 2000 for a gross sales price of $64,000.00. The tax return indicates that McDonough sold Unit 201, Building 1, post-Petition and did not list the $64,000.00 condominium, which had cost him $80,000.00, in his Schedules.

On cross-examination, both Debtors indicated that they own Sun Colony of Canada, LLC, a Canadian company. Sun Colony of Canada is not listed anywhere in Debtors' Schedules, Statements of Affairs, or tax returns. During 1999, Green Park Builders paid approximately $70,000.00 to Sun Colony of Canada.

Section 727(a)(3) places an affirmative duty upon a debtor to "create books and records accurately documenting his business affairs." *Peterson v. Scott (In re Scott)*, 172 F.3d 959, 968 (7th Cir.1999). Both Debtors acknowledged that there were inaccuracies on their returns and that the returns were inconsistent with their Schedules and Statements of Finan-

---

**9.** The copy of Volpe's 1999 tax return does not indicate the date it was prepared.

cial Affairs.[10] Even if the records were accurate, haphazardly prepared tax returns are not sufficient. *Krohn v. Frommann (In re Frommann)*, 153 B.R. 113, 118 (Bankr.E.D.N.Y.1993) ("tax returns 'prepared by an accountant from whatever records the accountant can garner from the tax payer, are not a significant indicia of sufficient record keeping.'") (citations omitted). The tax returns also were not kept in a contemporary manner for purposes of Section 727(a)(3). *See In re Strbac*, 235 B.R. 880, 885 (6th Cir. BAP 1999) (debtors are required to maintain contemporaneous, accurate records). Tax returns provide useful information to creditors to corroborate a debtor's financial information provided to the Bankruptcy Court. As previously noted, sophisticated debtors, such as Volpe and McDonough, are required to retain reasonable business records to enable creditors to ascertain their financial affairs. Accordingly, the Court concludes that the lack of business records in conjunction with the lack of adequate personal financial information amounts to a failure of Debtors to keep or preserve information from which Debtors' financial condition or business transactions might be ascertained within the meaning of § 727(a)(3).

■■■ Once it is determined that a debtor's records are inadequate, the burden shifts to the debtor to provide a justification. 11 U.S.C. § 727(a)(3); *Peoples Bank v. Colburn (In re Colburn)*, 145 B.R. 851, 859 (Bankr.E.D.Va.1992). McDonough maintained that he resigned from Green Park Builders prior to the filing of

bankruptcy, leaving Volpe in charge of the records. Volpe asserted that business records of some of the entities in which they had an interest, including Green Park, were destroyed when the office building in which the business records were located was foreclosed upon by creditors. Volpe would certainly have been aware that the business premises was undergoing foreclosure. *See Tucker v. Devine (In re Devine)*, 11 B.R. 487, 488 (Bankr.D.Mass. 1981) (failure to keep or preserve records unjustified where debtors were aware that landlord intended to changed locks). Debtors are to exercise diligence in preserving their business records. *See In re Vincent*, 159 B.R. 595 (Bankr.M.D.Fla. 1993).

■■■ McDonough's argument that he is not responsible for the records due to his resignation is not well-founded. A debtor is responsible for keeping accurate business records from which his financial condition can be ascertained— the duty cannot be delegated. *See, e.g., Seidle v. Escobar*, 53 B.R. 382, 385 (Bankr.S.D.Fla. 1985). *See also Malloy v. Goldstein (In re Goldstein)*, 123 B.R. 514, 526 (Bankr. E.D.Pa.1991) ("[debtor] had a duty to oversee and assure herself that records were kept [by business associate].")

Further, Debtors attempted to justify their lack of records by contending that their accountant is in possession of their records and would not prepare their individual or partnership tax returns without payment, which Debtors could not afford. Debtors' excuse that they cannot submit

**10.** Plaintiff did not bring an action pursuant to § 727(a)(4)(A) for denial of Debtors' discharge due to a false oath or account. Plaintiff contends that they could not ascertain any misrepresentations until the receipt of Debtors' tax returns. Plaintiff argues that it would be unfair to reward Debtors with their discharge when they did not submit information pertinent to a denial of discharge claim until approximately six (6) months following the deadline for filing objections to discharge. The Court need not address Plaintiff's argument in this regard as it finds an independent basis for denial of discharge under § 727(a)(3).

records because their accountant is in possession of the records is not a justifiable excuse. *See generally In re Sethi,* 250 B.R. 831, 841 (Bankr.E.D.N.Y.2000) (debtor cannot shift burden of maintaining records of business transactions to attorney involved in transactions). Debtors did not meet their burden of proving they were justified in failing to keep or preserve recorded information.

## CONCLUSION

The Court finds that the limited records provided by Debtors do not enable Plaintiff to ascertain Debtors' financial condition or business transactions. Debtors did not preserve any of the business records of the numerous companies in which they had an interest. Debtors testified that their failure to submit the tax returns or records is not a conspiracy and that they did not intentionally delay in submitting their tax returns. However, intent is not an element of § 727(a)(3). *See Aid Auto Stores, Inc. v. Pimpinella (In re Pimpinella),* 133 B.R. 694, 698 (Bankr.E.D.N.Y.1991); *Goldstein,* 123 B.R. at 525. Debtors testified that they simply ran out of money to repay their creditors.[11] This contention underscores the importance of § 727(a)(3). Keeping and preserving records to permit the trustee and creditors to confirm a debtor's financial condition is a prerequisite to obtaining a discharge of debts under Chapter 7. Plaintiff met its burden of proving that Debtors did not meet the minimum requirement under the Code of keeping and preserving recorded information from which their financial condition and business transactions could be ascertained, and Debtors did not provide a justifiable excuse for their failure to keep and preserve such information. Accordingly, Debtors' discharges are denied pursuant to § 727(a)(3).[12]

**AND IT IS SO ORDERED.**[13]

---

11. It has been noted that oral testimony is not sufficient to supplement that which is lacking from records in that creditors are entitled to have enough information on hand to evaluate the debtor's financial status. *Pimpinella,* 133 B.R. at 697–98.

12. As previously noted, the Court need not address Plaintiff's remaining causes of action.

13. Although these proceedings were consolidated for trial, this Order, and a Judgment to be entered contemporaneously herewith, shall be signed in duplicate and entered in original form on the docket for each Debtor.